**Clinton K. LaJOIE, Petitioner–Appellant,**

v.

**S. Frank THOMPSON, Superintendent, Oregon State Penitentiary, Respondent–Appellee.**

**No. 98–35919.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1999

Opinion Filed Jan. 31, 2000

Opinion Withdrawn and Amended Opinion Filed June 23, 2000

Thomas J. Hester, Assistant Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

Jennifer S. Lloyd, Assistant Attorney General, Salem, Oregon, for the respondent-appellee.

Before: FLETCHER, FERGUSON, and TASHIMA, Circuit Judges.

Opinion by Judge TASHIMA; Dissent by Judge FERGUSON

## ORDER

TASHIMA, Circuit Judge:

The opinion and dissenting opinion filed on January 31, 2000, and reported at 201 F.3d 1166, are withdrawn and the amended opinion and amended dissenting opinion attached to this order shall be filed in their place. With the filing of the amended opinions, Judges B. Fletcher and Tashima vote to deny the petition for panel rehearing. Judge Ferguson votes to grant the petition for panel rehearing. Judge Tashima votes to deny the petition for rehearing en banc and Judge B. Fletcher so recommends. Judge Ferguson recommends that the petition for rehearing en banc be granted.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on en banc rehearing. Fed. R.App. P. 35(b).

The petition for panel rehearing and the petition for rehearing en banc are denied.

## OPINION

Oregon state prisoner Clinton K. LaJoie appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction for rape, sodomy, and sexual abuse of a minor child, "VN".[1] LaJoie contends that his Sixth and Fourteenth Amendment rights were violated when evidence of VN's past sexual abuse by others was excluded, pursuant to Oregon's rape shield law, Oregon Evidence Code, Rule 412 ("Rule 412"), for failure to give the required 15–day notice of intent to introduce such evidence.[2] Because the exclusion of the evidence was an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, the district court erred in denying the petition. We therefore reverse and remand.

## I. BACKGROUND

LaJoie was accused of sexually abusing, orally sodomizing, and raping his housemate Jackie Williams' niece, VN, when she was approximately seven and eight years old. VN resided with LaJoie and Williams at the time of the alleged sexual assaults. Uncontested evidence shows that VN had been sexually abused by several others and raped by one other man in unrelated incidents. In addition, the Children's Services Division's ("CSD") case file on VN reveals other potential sources of sexual abuse.

After several continuances, LaJoie's trial was set to commence on October 31, 1989. On October 24, LaJoie filed a notice of intent to offer evidence of past sexual abuse suffered by VN and also filed a motion to compel the production of evidence in the CSD case file pertaining to this abuse. LaJoie sought to introduce evidence of VN's history of sexual abuse for three purposes: (1) to provide an alternate source of VN's ability to explain sexual acts; (2) to offer an alternative explanation for the medical evidence of abuse that

---

[1]. We use the initials "VN" to protect the identity of the minor victim.

[2]. LaJoie also contends that his trial attorney provided ineffective assistance of counsel in failing to comply with the 15–day notice requirement. Because we grant habeas relief on LaJoie's Sixth and Fourteenth Amendment claims, we do not reach this argument.

the prosecution would be offering; and (3) to support LaJoie's argument that VN's allegations were false and were invited by CSD caseworkers. The State moved to strike this evidence based on LaJoie's failure to give notice 15 days before the start of trial, as required under Rule 412.[3]

On October 31, 1989, the day the trial was scheduled to begin, the trial court conducted an *in camera* review of the CSD file. It concluded that the file contained evidence potentially admissible under Rule 412(2)(b)(B), because it was relevant to rebut or explain medical evidence offered by the State. It also determined that one piece of evidence was relevant to motive or bias of the alleged victim and thus was potentially admissible under Rule 412(2)(b)(A). The court, nonetheless, excluded the evidence because LaJoie did not meet the 15-day notice requirement.

LaJoie made an offer of proof of the excluded evidence to complete the record. Counsel stated that he would generally have relied on the evidence to offer "alternative explanations for the jury's consideration of prolonged sexual contact." The specific evidence from the CSD case file he intended to offer was that: (1) Michael Patterson had raped VN's brother and that he may have assaulted VN when she was two years old; (2) a boyfriend of VN's mother, Mike Forrest, may have sexually assaulted VN; (3) VN's great-uncle Daniel Leuck had admitted to fondling her rectal and vaginal areas on several occasions; (4) Brian Dayton, a teenager, had pulled down her pants on one occasion; and (5) Russell Watkins, another of her mother's boyfriends, had been convicted of raping and sexually abusing VN.

Dr. Scott Halpert testified for the State that he had examined VN and found that

3. Rule 412 provides in relevant part:

(1) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, ... reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.

(2) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, ... evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence:

(a) Is admitted in accordance with subsection (3)(a) and (b) of this section; and

(b) Is evidence that:

(A) Relates to the motive or bias of the alleged victim; or

(B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

(C) Is otherwise constitutionally required to be admitted.

(3)(a) If the person accused of committing rape, sodomy or sexual abuse ... intends to offer under subsection (2) of this section evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than 15 days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the

court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties, and on the alleged victim through the office of the prosecutor.

(b) The motion described in paragraph (a) of this subsection shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (2) of this section, the court shall order a hearing in camera to determine if such evidence is admissible....

(c) If the court determines on the basis of the hearing described in paragraph (b) of this subsection that the evidence the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence that may be offered and areas with respect to which the alleged victim may be examined or cross-examined. An order admitting evidence under this subsection may be appealed by the government before trial.

Or. Evid.Code, Rule 412.

"Past sexual behavior" under Rule 412 generally applies to child sexual abuse. *See State v. Wright*, 97 Or.App. 401, 776 P.2d 1294, 1298 (1989).

she had scarring on her hymen consistent with penetration and sexual abuse.[4] The only evidence the jury heard suggesting any source of sexual abuse other than La-Joie was a stipulated statement that VN had reported that Leuck had put his hands down her shorts and touched her front, and that Dayton had pulled her pants down with his sister watching. No evidence was presented that Watkins had been convicted of raping VN.

LaJoie was convicted of rape, sodomy, and sexual abuse, all in the first degree. He was sentenced to consecutive terms totaling 45 years with a mandatory minimum sentence of 10 years.

LaJoie appealed his conviction, contending that the trial court's ruling under the notice provision of Rule 412 denied him his Sixth and Fourteenth Amendment rights. The Oregon Court of Appeals summarily affirmed the trial court's judgment. *See State v. Lajoie*, 105 Or.App. 226, 804 P.2d 1230 (1991). On discretionary review, the Oregon Supreme Court affirmed in a divided, 4–3, decision. *See State v. Lajoie*, 316 Or. 63, 849 P.2d 479 (1993).

On December 31, 1996, LaJoie filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254. He alleges that the trial court's exclusion of evidence offered under Rule 412 violated his Sixth Amendment rights of confrontation and compulsory process and his Fourteenth Amendment right to due process. The district court denied LaJoie's petition. LaJoie filed a timely notice of appeal, and the district court issued a certificate of appealability. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## II. STANDARDS OF REVIEW

■ We review *de novo* a district court's decision to grant or deny a § 2254 habeas petition. *See Eslaminia v. White*, 136 F.3d 1234, 1236 (9th Cir.1998). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 1996 U.S.C.C.A.N. (110 Stat.) 1214, applies to LaJoie's petition because he filed it after the AEDPA's effective date, April 24, 1996. *See Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir.) (en banc), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). Under the AEDPA, "a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) '*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) '*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor*, —— U.S. ——, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1)) (emphases and alterations in the original).

In *Tran v. Lindsey*, 212 F.3d 1143 (9th Cir.2000), we noted the "distinct meanings" of "contrary to" and "unreasonable application of," as elucidated by Justice O'Connor in *Williams*:

A state court's decision can be "contrary to" federal law either 1) if it fails to apply the correct controlling authority, or 2) if it applies the controlling authori-

---

4. The dissent concludes from Dr. Halpert's testimony that "VN's medical condition was consistent with repetitive sexual injuries." Dissent at 677–78. The *only* opinion, however, that Dr. Halpert rendered "to a reasonable degree of medical certainty" was that VN's "exam was consistent with a child sexual abuse, and that there's been trauma to her hymen and probable penetration of that area." Later, when asked whether VN's injury "*may have been*" a repetitive injury," the doctor responded, "*I guess* my thoughts are much more toward repetitive injury . . . *I think* if you ask most people who are experts in this area, *most of us feel* this is more of a sign of repetitive injury." (Emphasis added.) Thus, Dr. Halpert did not render any opinion to a reasonable degree of medical certainty, contrary to the dissent's assertion, that VN's injury was "*consistent with repetitive injury.*" Moreover, and contrary to the dissent's assertion, *see* Dissent at 678, as part of LaJoie's offer of proof, Dr. Halpert testified that he could not rule out Watkins' rape as the cause of VN's injuries.

ty to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. A state court's decision can involve an unreasonable application of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonably.

*Id.* at 1149–50 (citing *Williams,* 120 S.Ct. at 1519–20).

■ "We review the determination of what is 'clearly established Federal law, as determined by the Supreme Court of the United States,' under 28 U.S.C. § 2254(d)(1), as a question of law which we must decide de novo." *Canales v. Roe,* 151 F.3d 1226, 1228–29 (9th Cir.1998).

## III. DISCUSSION

■ "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment,[5] the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)) (citations omitted). In discussing the Compulsory Process Clause, the Supreme Court has held that "[o]ur cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie,* 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (footnote omitted). "The defendant's right to com-

pulsory process is itself designed to vindicate the principle that the 'ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts.'" *Taylor v. Illinois,* 484 U.S. 400, 411, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (quoting *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). The main purpose of the Confrontation Clause is to ensure a criminal defendant the opportunity to cross-examine witnesses testifying against him. *See Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

In *Michigan v. Lucas,* 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), the Court reversed the Michigan Court of Appeals' per se rule that the notice requirement in Michigan's rape shield law violated the Sixth Amendment in all cases where it was used to preclude evidence of past sexual conduct between a rape victim and a criminal defendant. *See id.* at 146, 149–53, 111 S.Ct. 1743. The Court recognized that the Sixth Amendment right to present relevant testimony "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 149, 111 S.Ct. 1743 (quoting *Rock v. Arkansas,* 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (quoting *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973))) (internal quotation marks omitted).

The Court emphasized, however, that restrictions on a criminal defendant's right to confront witnesses and to present relevant evidence "'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Id.* at 151, 111 S.Ct. 1743 (quoting *Rock,* 483 U.S. at 56, 107 S.Ct. 2704); *see also United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (citing *Rock* and *Lucas* for the proposition). Although the Court concluded that failure to comply

5. The Sixth Amendment provides in part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the

witnesses against him [and] to have compulsory process for obtaining witnesses in his favor...." U.S. Const. amend. VI.

with a rape shield law's notice requirement "may in some cases justify even the severe sanction of preclusion," *Lucas,* 500 U.S. at 153, 111 S.Ct. 1743, "[t]his does not mean, of course, that all notice requirements pass constitutional muster," *id.* at 151, 111 S.Ct. 1743. The Court did not reach the issue of whether preclusion was justified in the particular case before it, however, leaving it to the Michigan courts to address "whether, on the facts of this case, preclusion violated Lucas' rights under the Sixth Amendment." *Id.* at 153, 111 S.Ct. 1743.

■■■] The Supreme Court, therefore, made clear that whether preclusion is a constitutional sanction must be evaluated on a case-by-case basis. *See also Taylor,* 484 U.S. at 414–15 & 415 n. 19, 108 S.Ct. 646 (embracing a balancing approach for determining whether preclusion of evidence as a sanction for violating discovery notice requirements violated a criminal defendant's Sixth Amendment rights). Numerous courts have read *Lucas* as requiring case-by-case balancing.[6] *See, e.g., Wood v. Alaska,* 957 F.2d 1544, 1551–54 (9th Cir.1992) (balancing the rationales underlying Alaska's rape shield statute and unfair prejudice against the probativeness of the excluded evidence in determining whether a Sixth Amendment violation occurred); *Agard v. Portuondo,* 117 F.3d 696, 703 (2d Cir.1997) (examining whether New York's rape shield law, applied to bar cross-examination of victim regarding sexual history, was facially and *as applied* arbitrary or disproportionate to the purposes it was designed to serve), *rev'd on other grounds,* —— U.S. ——, 120 S.Ct.

1119, 146 L.Ed.2d 47 (2000); *Stephens v. Miller,* 13 F.3d 998, 1001 (7th Cir.1994) (en banc) (holding that "although the principle of rape shield statutes has been held constitutional, both by this court and the Supreme Court in *Michigan v. Lucas,* ... the constitutionality of the law as applied remains subject to examination on a case by case basis"); *State v. Cuni,* 159 N.J. 584, 733 A.2d 414, 422 (1999) (holding that, under *Lucas,* the court should not preclude evidence under the rape shield law for procedural non-compliance "if the court finds that under the facts of the specific case preclusion violates the defendant's right to confront witnesses"); *State v. Johnson,* 123 N.M. 640, 944 P.2d 869, 876–78 (1997) (holding that trial courts must balance defendant's right to present a full and fair defense with the state's interests in each case to determine whether exclusion of evidence under rape shield law is unconstitutional); *People v. Lucas,* 193 Mich.App. 298, 484 N.W.2d 685, 687 (1992) ("It is clear from the United States Supreme Court decision in *Lucas* ... that a determination whether the notice requirement violated a defendant's right of confrontation must be made case by case."). In line with the overwhelming majority of decisions interpreting *Lucas,* including this court's, at the time the Oregon Supreme Court rendered its decision in LaJoie's direct appeal, clearly established Supreme Court law mandated a case-by-case balancing approach for determining whether evidence may be precluded under a rape shield law.[7]

---

**6.** It is appropriate to look to lower court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. *See Duhaime v. Ducharme,* 200 F.3d 597, 598 (9th Cir.2000) ("This [the requirement of § 2254(d)(1) ] does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly estab-

lished.' ") (citing *MacFarlane v. Walter,* 179 F.3d 1131, 1139 (9th Cir.1999) (in turn, citing *O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir. 1998))). *See also Tran,* 212 F.3d at 1153–54 (post-*Williams* case continuing to cite and rely on *Duhaime* ).

**7.** The Supreme Court's 1991 decision in *Lucas* was announced in the interim between LaJoie's trial and the Oregon Supreme Court's consideration of his appeal. We look to the decision of the highest state court to address the merits, here the Oregon Supreme Court, in determining whether the state

The Oregon Supreme Court applied *Michigan v. Lucas* in LaJoie's case and concluded that preclusion of the evidence of VN's past sexual abuse for LaJoie's failure to give 15 days' notice comported with the United States Constitution. *See Lajoie*, 849 P.2d at 487–90. LaJoie correctly contends, however, that the court misapplied *Lucas* in finding that preclusion of the evidence did not violate LaJoie's constitutional rights. The court correctly noted *Lucas'* holding that preclusion of evidence for violation of notice requirements of rape shield laws does not violate the Sixth Amendment, if such a sanction is neither arbitrary nor disproportionate to the purposes of the notice requirement. *See id.* at 489 (citing *Lucas*, 500 U.S. at 151, 111 S.Ct. 1743). The court then proceeded, however, to examine in the abstract whether the purposes of Oregon's rape shield law and its notice requirement justified preclusion as a sanction for non-compliance with the notice provision. *See id.* at 489–90. The court noted that the notice requirement was designed to prevent surprise to the prosecution and the alleged victim, avoid undue trial delay, and protect the alleged victim from needless anxiety concerning the scope of the evidence to be produced at trial. *See id.* at 489. It concluded that the notice requirement was not arbitrary or disproportionate with respect to these intended purposes. *See id.* at 489–90. It never considered or balanced the interests in LaJoie's particular case, concluding instead that the balancing of the rights of defendants *generally* with the other legitimate interests was inherent in the rule itself. *See id.* at 487, 489–90. Because the Oregon Supreme Court did not balance the interests in LaJoie's particular case, as required by *Lucas*, the district court erred in concluding that the state court decision was not an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.[8]

court's decision is contrary to clearly established federal law. *See Jeffries*, 114 F.3d at 1501 (finding that "because the *Washington Supreme Court's decision* was based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings and was contrary to clearly established federal law, the Act if applied would not preclude the issuance of a writ of habeas corpus") (emphasis added); *Green v. French*, 143 F.3d 865, 880 (4th Cir.1998), *cert. denied*, 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999) (focusing inquiry on habeas review on whether the North Carolina Supreme Court's decision rejecting defendant's allocution claim was contrary to clearly established Supreme Court law). Therefore, it follows that we look to the state of the law at the time the Oregon Supreme Court considered LaJoie's case, meaning that we include *Lucas* in the body of law constituting our benchmark of "clearly established Federal law."

8. The dissent catalogs at length all of the "valid reasons" the State had to exclude the evidence in this case. *See* Dissent at 680. None of those reasons, however, was relied on by the Oregon Supreme Court in upholding exclusion of the evidence, notwithstanding its assertion that it would examine the "specific facts" of this case. *Lajoie*, 849 P.2d at

481. As set forth above, without weighing either the reasons in favor of exclusion, as set forth by the dissent, *or* the reasons in favor of admitting the evidence *in this case*, the Oregon Supreme Court excluded the evidence solely because of LaJoie's failure to comply with the notice requirement of Rule 412. *See id.* at 489–90 ("[W]e conclude that the process required by OEC 412 for the admission of evidence of past sexual behavior of an alleged victim of a sexual crime is neither arbitrary nor disproportionate to the purposes that it is intended to serve. The process established by OEC 412 is a reasonable condition on the defendant's exercise of the right to present evidence.... We therefore hold that preclusion of evidence of the complaining witness' prior sexual behavior under OEC 412 does not violate defendant's rights under the Sixth Amendment."). The dissent mistakenly analyzes this case as if the issue were the validity of the substantive purposes served by the rape shield rule. The *only* issue in this case, however, is whether the purposes served by the *notice* provision of the rule required exclusion.

Thus, the dissent's reliance on the supposed fact that, in *Lucas*, "the Supreme Court noted the same reasons I do when it analyzed the constitutionality of applying the notice provi-

Had the Oregon Supreme Court weighed the interests in LaJoie's particular case, it reasonably could have concluded only that the preclusion of the evidence of VN's past sexual abuse violated LaJoie's Sixth Amendment rights. The trial judge correctly found that some of the evidence was relevant to provide an alternate explanation of the medical evidence and therefore fit within one of the exceptions to the general prohibition of sexual behavior evidence.[9] *See* Rule 412(2)(b)(B). The prosecution relied on medical evidence of injuries to VN's hymen, thus inviting the inference that LaJoie must have caused those injuries. Watkins, however, had been convicted of raping VN, a crime that LaJoie correctly points out requires proof of penetration. *See* Or.Rev.Stat. § 163.305 (providing that " 'sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight"); § 163.375 (defining rape in part as sexual intercourse with a person under age 12). Indeed, at oral argument, the State conceded that this evidence was relevant.[10] Further, LaJoie could have probed the evidence of other sexual abuse to ascertain whether the hymenal injuries could have stemmed from that abuse as well.

*See United States v. Begay*, 937 F.2d 515, 523 (10th Cir.1991) (finding that evidence of prior rape should not have been excluded under federal rape shield law because prosecutor relied heavily on medical evidence of enlarged hymen in attempting to establish defendant's guilt).

The evidence of VN's rape by Watkins was also relevant to show that VN could have learned about sexual acts and male genitalia other than through rape by LaJoie. *See State v. Budis*, 125 N.J. 519, 593 A.2d 784, 791–92 (1991) (evidence of prior abuse of child victim was relevant to rebut inference that child acquired the knowledge to describe sexual matters from her experience with defendant); *State v. Pulizzano*, 155 Wis.2d 633, 456 N.W.2d 325, 335 (1990) (rape shield law barring evidence that child victim had alternate source of sexual knowledge was unconstitutional as applied); *State v. Carver*, 37 Wash.App. 122, 678 P.2d 842, 843–44 (1984) (evidence of past sexual abuse of minors should have been admitted to rebut the inference that they would not know about such sexual acts unless they had experienced them with defendant). The jury did not hear of the situations from which VN could have

---

sion of Michigan's rape shield rule to preclude evidence," Dissent at 6805 n. 8, is both mistaken and misplaced. The Court clearly did *not* "analyze the constitutionality of *applying* the notice provision," as the dissent contends. *See Lucas*, 500 U.S. at 153, 111 S.Ct. 1743 ("We express no opinion as to whether or not preclusion was justified in this case.") The Court expressly remanded the case "to the Michigan courts to address in the first instance whether Michigan's rape-shield statute authorizes preclusion and whether, on the facts of this case, preclusion violated Lucas' rights under the Sixth Amendment." *Id.*

9. The dissent's reliance on *United States v. Payne*, 944 F.2d 1458 (9th Cir.1991), to support a contrary assertion, *see* Dissent at 6798–99, is misplaced. In *Payne*, the prosecution expert testified that sexual intercourse caused the injury at issue. *See id.* at 1469–70. The proffered other evidence was "heavy petting" which might have involved digital penetration, as to which the prosecution's expert stated that "[h]e. wouldn't expect it to change the size of the vaginal canal" of the 12–year

old victim. *Id.* at 1470. The defendant's expert did not contest this assertion. Thus, the evidence of the alleged other incident was correctly excluded as having only "minimal, if any, probative value." *Id.* Here, there is no question of the highly probative value of the other acts evidence which involved sexual penetration (rape) of VN by Watkins. Additionally, the prosecution's expert could not say whether Watkins' actions caused VN's injury. Thus, *Payne* is unhelpful, much less controlling.

10. The dissent contends that this "is not correct." Dissent at 676 n. 4. Although, in response to the court's question whether the Watkins conviction "[s]hould ... not have been allowed," counsel for the State first responded "I think it may have been allowed [and] the trial court reached the merits of the 412 analysis," counsel then immediately added, "the trial court could probably could have without using its discretion have decided that that [the Watkins conviction] was relevant in this case." If the court "could have" decided it was relevant, it obviously was relevant.

gained knowledge about what a sexually-aroused man looks like, or what vaginal penetration was. If this evidence had been admitted, the jury could have concluded that VN knew this from her abuse by Watkins.[11]

Weighing LaJoie's interest in presenting this evidence against other countervailing interests, we conclude that none of the interests justifying the notice requirement of Rule 412 in the abstract would have been abridged had LaJoie been allowed to use the evidence. The Oregon Supreme Court determined that the 15–day notice period permitted time for the evidence to be carefully screened to determine whether it was relevant or whether its probative value outweighed its prejudicial effect, and guarded against undue trial delay. In LaJoie's case, however, the trial court was able to screen the CSD case file within the time available and to decide which portions of the file were relevant. Moreover, the prosecutor had arguments prepared two days later for the hearing on why the evidence should be excluded. Surely, it would not have taken the trial court much longer to take the final step of determining whether the relevant evidence was overly prejudicial and setting the boundaries regarding its admissibility.[12] In light of the fact that the trial had not begun when LaJoie first gave notice of his intent to rely on the evidence, even granting a short continuance of a few days, assuming one would have been required, would not have upset the proceedings, or otherwise injured the interest of the State, in any significant manner.

Nor was the interest in preventing unfair surprise to the prosecution implicated here. The prosecutor in LaJoie's case had just finished trying the rape case of Watkins, in which the CSD case file was identical. Thus, she was familiar with all the details of VN's past sexual abuse. Further, there was no evidence that the failure to give the 15 days' notice was willful or strategic, rather than neglectful, on the part of LaJoie's counsel. *See Taylor*, 484 U.S. at 417, 108 S.Ct. 646 (finding that counsel's willful misconduct in violating discovery rules justified harsh sanction of preclusion).

The Oregon Supreme Court determined that Rule 412's notice period also provided protection against harassment of the alleged victim by giving the victim fair warning about what evidence of her past sexual activity would be introduced and by allowing a victim to cease worrying 15 days before trial about what evidence of her past sexual activity would be introduced. *See Lajoie*, 849 P.2d at 487, 489. We recognize that, at least in some cases, "a State's interest in the protection of minor victims of sex crimes from further trauma and embarrassment is a compelling one...." *Maryland v. Craig*, 497 U.S. 836, 852, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). In this case, however, because the alleged victim was a 10–year old at the time of trial, we conclude that the interest of the victim in eight extra days of repose

---

**11.** The dissent contends that "our Court rejected the same argument on indistinguishable facts in *United States v. Torres*, 937 F.2d 1469, 1474 (9th Cir.1991)." Dissent at 676. In *Torres*, however, the alleged other act of abuse occurred "approximately six months after the acts" that were at issue in the case—and well after the victim had reported the abuse at issue. *Id.* at 1471. Moreover, nothing in the record indicates that the subsequent, other act involved any form of penetration. *See id.* Here, none of the evidence of alleged other acts of abuse admitted at LaJoie's trial involved penetration, although Watkins had been convicted of previously rap-

ing VN during the same time period as the incidents with which LaJoie was charged. Finally, VN was familiar with the male anatomy as displayed on an anatomically correct doll and stated "he tried to make it fit but it just wouldn't fit." The admission of Watkins' conviction for raping VN would have placed before the jury evidence that VN was familiar with the act of penetration from events other than those allegedly involving LaJoie. Again, the case is unhelpful, much less controlling.

**12.** As it turned out, the trial did not start as scheduled on October 31, 1989, but was continued until November 3.

is far outweighed by the probativeness of the excluded evidence.

 Even if the purpose of the rape shield statute is disproportionately outweighed by the probativeness of the evidence in a particular case, the evidence may still be constitutionally excluded if it is unduly prejudicial. *See Wood*, 957 F.2d at 1551–54 (9th Cir.1992) (holding that no Sixth Amendment violation occurred where the prejudicial effect of the evidence excluded under the rape shield statute outweighed its probative value). Admitting the excluded evidence in this case, however, would not create undue prejudice. The evidence is distinguishable from evidence of an adult or sexually-mature minor's sexual history which could be improperly used by the jury in deciding whether she was raped. Rather, the evidence in this case concerned non-consensual sexual abuse of a young child; thus, the jury was unlikely to draw an unfavorable and unwarranted impression of the alleged victim.

We conclude that the interests of the State and VN do not outweigh LaJoie's interest in introducing relevant evidence of the past sexual abuse VN had suffered. LaJoie's Sixth Amendment rights were violated, because the sanction of preclusion of this evidence in this case was "arbitrary and disproportionate" to the purposes of the 15–day notice requirement. Therefore, even under a proper application of the *Lucas* test, the decision of the Oregon Supreme Court to preclude the evidence would still amount to "an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[13]

In a federal habeas proceeding, "the standard for determining whether habeas relief must be granted is whether . . . the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). LaJoie correctly contends that the jury convicted him without the benefit of the evidence of the past sexual abuse which, in several ways, tended to make it less likely that LaJoie had raped and sexually abused VN.

The evidence the jury heard tending to refute the credibility of VN, including that from a doctor who testified that VN told him that LaJoie never penetrated her, and that from two of VN's teachers who averred that VN was not an honest child, was not sufficient to mitigate the "substantial and injurious" effect of excluding the evidence of past sexual abuse of VN. Specifically, the excluded evidence could have allowed the jury to: (1) determine that the scarring on VN's hymenal ring and on the posterior formix of her vagina might not have been caused by LaJoie; and (2) provide an alternative explanation of VN's familiarity with sexual acts.

In sum, LaJoie's defense was seriously undermined because the jury heard only that part of the story that implicated him and was not permitted to hear highly probative evidence which the jury could have determined was exculpatory.[14] The preclusion of this evidence had a substantial and injurious effect on the verdict; thus, the district court erred in denying LaJoie's petition for writ of habeas corpus.

**13.** Although it is conceivable that the same state court error may fall under both the "contrary to" and the "unreasonable application of" prongs of § 2254(d)(1), *see Tran*, 212 F.3d at 1149–50, because we have concluded that the Oregon Supreme Court's application of *Lucas* was an unreasonable application of clearly established federal law, we need not examine whether it was also "contrary to" clearly established federal law.

**14.** This case is unlike *Tague v. Richards*, 3 F.3d 1133 (7th Cir.1993), on which the dissent relies. *See* Dissent at 682–83. We simply do not find "overwhelming evidence against LaJoie."

## IV. CONCLUSION

The district court erred in concluding that the Oregon Supreme Court's decision was not an unreasonable application of clearly established United States Supreme Court precedent, because: (1) the Oregon Supreme Court did not examine the interests present in LaJoie's particular case, as required by Lucas; and (2) preclusion of the evidence of VN's past sexual abuse as a sanction for LaJoie's failure strictly to comply with Rule 412's notice requirement was arbitrary and disproportionate to the aims of the rape shield law's notice provision. We therefore reverse the judgment of the district court and remand with directions to issue a conditional writ of habeas corpus releasing LaJoie from custody, unless he is retried within a reasonable period of time to be determined by the district court.

**REVERSED and REMANDED.**

FERGUSON, Circuit Judge, dissenting:

The majority opinion contains several fundamental errors. First, the majority incorrectly determines that the evidence Clint LaJoie ("LaJoie") sought to put before the jury is relevant. Second, the majority errs in finding that LaJoie's interests in introducing the evidence outweigh those of the State in precluding it. Even worse, it has effectively carved out an exception to a rape shield statute's notice requirement whenever a defendant victimizes a child. Finally, assuming that the state courts have committed constitutional error, the majority mistakenly identifies it as one that warrants habeas relief. For these reasons, I dissent.

### I. *Factual Background*

From the time she was two years old until she was eight, VN's life was a nightmare. While she lived with her mother, she was sexually assaulted by: (1) an older brother; (2) a thirteen-year old boy; (3) a fifty-year old man; and (4) a sex offender who also happened to be her mother's boyfriend. After being forced to live in one home after another, she was sent to live with her aunt and her aunt's boyfriend, LaJoie, at his isolated farm. VN was in the second grade.

Although VN had been a longtime victim of child abuse by the time she moved in with LaJoie, he made her life worse. VN testified that she was happy "[t]hat I got to live with my aunt." But from then on, LaJoie came to VN almost every night, shook her awake, took off her underwear, and groped, fondled, and raped her while her aunt slept. In VN's own words, "[h]e did bad touch," which she explained at trial was "when somebody touches you where you don't want them to." He rubbed and chafed her "private" with his fingers, palm, tongue, and his "private." Sometimes, he ordered VN to "lick his private." While Uncle Clint did "bad touch," VN "was thinking that it wasn't right" and that "it did not feel good." But VN was afraid of LaJoie because "every time he finished," he promised her that if she told, he would whip her with his leather belt.

During this period of her life, VN's "private was sore" in the morning when she woke up to go to grade school. At trial, VN recalled that "[i]t hurt ... on my private." A medical expert in child abuse testified that the condition of VN's hymen in 1988, right after she was removed from LaJoie's farm, was consistent with repetitive sexual injuries. One of VN's teachers corroborated this expert testimony by telling jurors that, during the time VN lived with LaJoie, she complained "fairly frequently" that it hurt "down there."

### II. *The Excluded Evidence*

A week before trial was set to begin, and eight days too late under Oregon's rape shield statute, LaJoie asked the court to permit him to introduce evidence of VN's history of sexual abuse by others. Specifically, he wanted the jury to hear about five separate incidents which occurred before VN came to live with him: first, that a teenaged boy had pulled down her pants

once when she was five; second, that a man had sexually assaulted VN's brother; next, that her brother had inserted a plastic knife into her anus when she was three; fourth, that a relative had touched her genitals when she was about five; finally, that her mother's boyfriend had raped VN once when she was eight. LaJoie argued that this evidence would give the jury an alternative explanation for both the condition of VN's hymen and what he deemed her sophisticated awareness of sexual terminology.

The state trial court held a hearing to determine whether LaJoie could introduce the evidence. It inquired as to how long LaJoie had known of the incidents of prior abuse because Oregon's rape shield statute, which is patterned after Federal Rule of Evidence 412, requires 15 days notice from any defendant who seeks to introduce evidence of an alleged victim's sexual history.[1] Where a defendant misses the 15-day deadline, that person can nevertheless seek the court's permission to introduce the evidence if it has newly arisen or has been newly discovered and could not have been obtained through the exercise of due diligence. Or. Evid.Code, Rule 412. During the hearing, the trial court determined that LaJoie's attorney learned of the evidence well before the deadline. Indeed, LaJoie admits, "the evidence was known to [defense counsel] well in advance of the notice deadline."

After a hearing on the matter, the trial court decided to exclude the evidence both because it was irrelevant and confusing, and because LaJoie had missed the deadline under Oregon's rape shield statute. At one point during the hearing, the trial judge said, "[l]et's narrow it to [the mother's boyfriend]. I don't think the other stuff is, first of all, relevant to this case, specifically when we go back years beyond."[2] Later, the judge ruled that even the evidence about the rape by the mother's boyfriend was too confusing to come before the jury on the issue of VN's awareness of sexual terminology, explaining that "I find that the information, if relevant, is in this situation so confusing as to the issue of crimes of Mr. LaJoie, as not to be admissible. I want to steer away from these matters involving [the mother's boyfriend]." The judge also decided to exclude the evidence because LaJoie had missed the 15-day deadline and could not show that any of the exceptions applied.

In spite of the trial court's ruling, LaJoie essentially received what he wanted because the jury learned at several points that others had sexually assaulted VN. First, it obtained a stipulation describing the abuse VN suffered at both the hands of her relative and the teenaged boy. Second, it learned that VN had participated for several months in group therapy for sexually abused children and that LaJoie had nothing to do with that referral. Third, a Children Services Division counselor testified that VN "said that her Uncle Clint was the *first person* who had done what she called bad touch." (Emphasis added). This testimony revealed, of course, that others had molested VN. Finally, VN's aunt testified that she had spoken to two police officers about reports of abuse that did not relate to LaJoie at all. Thus, although the jury did not hear the gory details, it did learn that VN had an extensive history of sexual abuse by

1. Under Oregon law, "sexual history" includes sexual assault. *State v. Wright*, 97 Or.App. 401, 776 P.2d 1294, 1297 (1989).

2. The judge repeated his ruling later in the course of trial, when the prosecutor sought the admission, over LaJoie's objection, of the relative's confession. Agreeing with LaJoie that the evidence was confusing, the court explained:

At some point we'll either draw a line where somebody is going to be unhappy with placement of that line or else we're going to have to have a trial on the ... matter [involving the relative], and this jury is then going to have to make a determination whether that event occurred or did not occur. And we're not going to do that because it's going to confuse the issues in this case.

others. It nevertheless rejected LaJoie's defense of innocence and found him guilty of rape, sodomy, and sexual abuse, all in the first degree.

### III. Applicable Law

We must engage in a two-part inquiry to determine whether exclusion of the evidence LaJoie sought to put before the jury violated the Sixth Amendment. *Wood v. Alaska*, 957 F.2d 1544, 1549–50 (9th Cir. 1992). First, we must determine whether the evidence is relevant. *Id.* If it is, then we must evaluate whether the State's interest in excluding it outweigh LaJoie's interests in presenting it. *Id.*

### A. None of the Evidence Was Relevant.

The majority mistakenly believes that the evidence LaJoie sought to introduce was relevant and admissible.[3] No defendant has a constitutional right to present irrelevant evidence. *Wood*, 957 F.2d at 1550. Moreover, as we have explained, "[t]he jury is the proper body to weigh conflicting inferences of fact, but there clearly is some point at which evidence may be so lacking in probity and so productive of confusion that it may constitutionally be excluded." *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir.1983), *cert. denied*, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). The record in this case demonstrates that none of the evidence was admissible.[4]

#### i. VN's Awareness of Sexual Terminology.

At the time of LaJoie's trial, VN was ten years old and she displayed an awareness of sexual terminology that fit her age. When she told jurors about LaJoie's crimes, she used words like "bad touch," "rub," "my private," with "his private," "fingers," "tongue," "sore," and "hurt." At her most graphic, she remembered that LaJoie's "private" was "kind of away" while he did "bad touch." When the prosecutor prodded her with questions about where LaJoie had put his "private," VN responded initially that she could not remember and finally admitted that she could not put into words what LaJoie had done to her. It was only when the prosecutor handed her anatomically correct dolls that she was able to say, "he tried to make it fit but it just wouldn't fit." But she soon was back to telling jurors that she could not verbalize the crimes he had committed.

At trial, LaJoie contended that VN's history of abuse was relevant to provide jurors an alternative explanation for what he deemed an unusual knowledge of sex. The trial court refused to admit the evidence for this purpose. In so ruling, the court explained, "I find that the information, if relevant, is in this situation so confusing as to the issue of crimes of Mr. LaJoie, as not to be admissible."

Contrary to the majority's belief, VN did not display a sophisticated knowledge of sexual terminology that triggered a constitutional right to present an alternative explanation for its source. Indeed, our Court rejected the same argument on indistinguishable facts in *United States v. Torres*, 937 F.2d 1469, 1474 (9th Cir.1991), *cert. denied*, 502 U.S. 1037, 112 S.Ct. 886,

---

3. Rule 401 of the Oregon Revised Statutes provides that: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Or.Rev.Stat. § 40.150, Rule 401.

 Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." Or.Rev.Stat. § 40.160, Rule 403.

4. The majority writes that the State conceded the relevance of the evidence at oral argument. This is not correct. The state simply said that the *trial court* "may have" decided that the incident involving the mother's boyfriend's rape was relevant.

116 L.Ed.2d 789 (1992). Torres was convicted of aggravated sexual abuse of a child. On appeal, he argued that the trial court violated his right of confrontation when it refused to permit him to provide an alternative explanation for what he deemed was his nine-year old victim's sophisticated knowledge of sexual terminology. We refused to find error, reasoning, "the victim's testimony did not demonstrate any unusual knowledge of sexual techniques or nomenclature." *Id.* This was because the victim's testimony, like that of VN, "was replete with simple references to 'private spot,' 'private parts' and 'private places.'" *Id.* LaJoie's argument that VN displayed an uncommon awareness of sexual terminology lacks merit and we should accordingly deem the evidence of her sexual history irrelevant.

The majority's attempt to distinguish *Torres* misses the point. Maj. Op. at 672 n. 11. The majority asserts that *Torres* is different from this case because the excluded evidence did not involve penetration, whereas LaJoie's proffered evidence did. But we did not uphold the trial court's exclusion there because of the nature of the evidence. Indeed, we did not consider the evidence at all. Rather, we dealt with the preliminary question of whether a victim displays an uncommon awareness of sexual terminology. If not, determining the relevance of the evidence is unnecessary. Here, we do not need to consider the evidence because, like the victim in *Torres,* VN had a knowledge of sexual terminology that fit her age.

### ii. *VN's Medical Condition.*

The evidence LaJoie sought to put before the jury would not have provided an alternative explanation for her medical condition. The prosecution in this case did not rely on evidence of one incident of rape, but rather, sought to convince jurors that VN's medical condition was consistent with repetitive sexual injuries. One of VN's teachers testified that VN complained "fairly frequently" that it "hurt down there." And, the State's medical expert in child abuse specifically rejected the notion that VN had been raped only once, as the following colloquy makes clear:

Q. Based upon your physical observations of [VN], do you have an opinion to a reasonable degree of medical certainty as to what you were observing?

A. I would say that her exam was quite consistent with a child sexual abuse, and that there's been trauma to her hymen and probable penetration of that area.

Q. With regard to that, Doctor, is there, based upon your physical observations, could you explain to the jury whether or not you can determine whether or not this is a one time injury or whether it may have been a repetitive injury?

A. I guess my thoughts are much more toward *repetitive injury* . . . . Acute injuries—and those acute injuries heal fairly well, when it's a one time occurrence. . . . And this is like a mucus membrane in your mouth. It heals pretty well without a lot of scarring sometimes. And the thought of the rounding and some of the changes that we see in [VN], I think if you ask most people who are experts in this area, *most of us feel this is more of a sign of repetitive injury.* (Emphasis added).[5]

5. Despite the plain words of this testimony, the majority asserts that the expert did not testify to a reasonable degree of medical certainty that VN suffered repetitive injuries. Maj. Op. at 667 n. 4. This assertion is wrong for two reasons: first, the expert's second answer relating to repetitive injuries followed immediately on the heels of his preliminary answer identifying VN as a victim of child abuse; second, he failed to qualify his opinion about the nature of the injuries by stating that it did not reflect a reasonable degree of medical certainty. The majority's assertion suggests that whenever an expert utters words

The evidence LaJoie offered to introduce at trial did not match VN's medical condition. Most of it did not involve penetration and thus could not have caused VN any sexual injury. The sole exception was that of the mother's boyfriend, whose one rape could not have explained the *"repetitive* injury."[6] Moreover, LaJoie failed to present expert testimony during his offer of proof to support his contention that the mother's boyfriend, or anyone else for that matter, was responsible for the repetitive sexual injuries VN had suffered.

The majority asserts that this expert "testified that he could not rule out Watkins' rape as the cause of VN's injuries." Maj. Op. at 667 n. 4. But it has taken the expert's response out of context. During the offer of proof, defense counsel asked the expert whether he had been given the Children Services Division's file on VN. He responded that, although he had received it, he could not remember its details. Defense counsel next asked him whether he could pinpoint the exact episode causing the repetitive injuries. He responded that he could not. Then the following colloquy occurred:

> Defense Counsel: You cannot say the Watkins description of *touching with the penis* did not cause the changes, can you? (Emphasis added).
>
> The Witness: No.

Put into context, the witness' response suggests that he said "no" because, having not reviewed VN's file, he could not remember the details of VN's history of abuse and thus could not rule out Watkins' role in causing her injuries.

like "I guess my thoughts are" and "I think" before offering an opinion, it cannot reflect a reasonable degree of medical certainty. Requiring parties and witnesses in instances such as this to repeat the phrase "to a reasonable degree of medical certainty" in their questions and testimony goes too far. We have never before imposed such a stringent verbal requirement on experts, and nor should we now.

6. It is questionable whether the evidence of the mother's boyfriend's rape could have even

This case falls squarely under *United States v. Payne,* 944 F.2d 1458 (9th Cir. 1991), *cert. denied,* 503 U.S. 975, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992). Payne was convicted of carnal knowledge of a female under sixteen years of age. *Id.* at 1462. At trial, an expert testified that the condition of the twelve year old victim's vagina was consistent with multiple episodes of sexual injury. *Id.* The trial court refused to allow Payne to present evidence that the victim had engaged in heavy petting in a trailer with someone else. *Id.* at 1468. On appeal, our Court rejected Payne's argument that this exclusion violated the Sixth Amendment because we held that the evidence was more prejudicial than probative. We explained that Payne:

> suggest[s] that digital penetration quite possibly occurred during the incident, and argues that such penetration could explain the condition of Margaret's hymen and vagina. At trial, however, Payne offered no expert testimony in support of that argument. Dr. Meadows, Margaret's examining physician, testified that the condition of Margaret's vagina was consistent with multiple episodes of sexual intercourse.... The defense expert did not testify that digital manipulation could account for the medical evidence. Thus, the trailer incident had minimal, if any, probative value as rebuttal to the medical evidence, and its exclusion was neither an abuse of discretion nor a violation of Payne's confrontation rights.

*Id.* at 1469–70. Other circuits have similarly held that where the evidence a defendant offers does not alternatively explain

caused VN one sexual injury. As the prosecuting attorney explained, "[VN]'s description of it was that his penis did not enter inside her into the vaginal area, but was merely going across the top of the vaginal lips of the labia and penetrated inside there a slight distance. Again, her description of what happened on that occasion would not controvert the medical evidence the State intends to offer with regard to the hymen ..."

the prosecution's medical evidence, it is not error to exclude it. *See, e.g., Jones v. Goodwin,* 982 F.2d 464, 469 (11th Cir.1993) (holding that the petitioner did not have a constitutional right to introduce evidence of the victim's prior sexual conduct when the State did not rely on evidence of virginity); *United States v. Eagle Thunder,* 893 F.2d 950, 954 (8th Cir.1990) (determining that the trial court did not err when it refused to admit evidence of a non-recent hymenal tear because it could not provide alternative explanation for recent one), *cert. denied,* 514 U.S. 1076, 115 S.Ct. 1721, 131 L.Ed.2d 580 (1995).

The majority concludes that evidence of the mother's boyfriend's conviction for rape would have provided jurors with an alternative source for VN's medical condition. This assertion suffers from the same fundamental flaw that was made in *Payne:* the evidence of one rape could not have contradicted evidence of VN medical condition, which reflected repetitive sexual injuries. Like the defendant in *Payne,* moreover, LaJoie failed to offer any expert testimony in support of his argument that the mother's boyfriend's rape could have caused VN's condition. The evidence he sought to introduce was, therefore, of minimal probative value and the court's refusal to let it come in violated no constitutional right.

The majority mischaracterizes my reliance on *Payne.* Maj. op. at 671 n. 10. Like the majority, I do not think that *Payne* requires that a defendant present expert medical testimony to show that the proffered evidence provides an alternative explanation for an alleged victim's medical condition. I do believe, however, that *Payne* stands for the rather basic proposition that if the proffered evidence (here, a one-time sexual injury; in *Payne,* "heavy petting") does not provide an alternative explanation for a medical condition (here, repetitive sexual injury; in *Payne,* "multiple episodes of sexual intercourse"), a trial court does not err in refusing to admit it.

### iii. *VN's Credibility.*

Finally, the evidence LaJoie sought to introduce was irrelevant to the question of the child's credibility. As a general matter, a trial court does not commit error in excluding evidence "so long as the jury has 'sufficient information' upon which to assess the credibility of witnesses." *Wood,* 957 F.2d at 1550 (citations omitted). More specifically, it is well established that "a trial court's limitation of cross-examination on an unrelated prior incident, where its purpose is to attack the general credibility of the witness, does not rise to the level of a constitutional violation of the defendant's confrontation rights." *Payne,* 944 F.2d at 1469.

In this case, the jury had sufficient information to determine whether VN was credible. Two teachers testified for the defense that VN was not honest. LaJoie took the stand and professed his innocence. He also told jurors that he reluctantly let VN move in, and avoided her while she lived there, because he suspected her of falsely accusing her relative of sexual abuse. Finally, LaJoie vigorously cross-examined VN about her motives in reporting him for rape. Despite this information, the jury found VN credible and convicted LaJoie.

### iv. *Conclusion.*

In sum, the evidence LaJoie sought to introduce was irrelevant. First, the evidence would not provide an alternative explanation for VN's sexual vocabulary because she did not display an unusual knowledge of sex. Second, it would not give jurors an alternative for her medical condition. Finally, it was inadmissible for attacking her credibility, especially in light of the fact that LaJoie introduced a substantial amount of evidence which was adverse to her credibility. The determination that the evidence was inadmissible should end our inquiry and we should conclude that the trial court's exclusion did not violate LaJoie's confrontation rights. Given the majority's assumption that the

evidence is relevant, I will also analyze the second part of the test.

### B. The Oregon Supreme Court Fulfilled Its Constitutional Duty Under Michigan v. Lucas.

Assuming that the evidence LaJoie sought to introduce is relevant, the majority incorrectly believes that the Oregon Supreme Court failed to fulfill its constitutional duty under *Michigan v. Lucas*, 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991). The Supreme Court in *Lucas* faced the converse question we do here: "whether the legitimate interests served by a notice requirement can ever justify precluding evidence of a prior sexual relationship between a rape victim and a criminal defendant." *Id.* at 151, 111 S.Ct. 1743. The Supreme Court answered in the affirmative and accordingly struck down the Michigan Court of Appeals' per se rule prohibiting preclusion of evidence for failure to comply with a rape shield statute's notice requirement. *Id.* at 152, 111 S.Ct. 1743. The Court remanded to "the Michigan courts to *address* in the first instance whether Michigan's rape-shield-statute authorizes preclusion and whether, on the facts of this case, preclusion violated Lucas' rights under the Sixth Amendment." *Id.* at 153, 111 S.Ct. 1743 (emphasis added).

The Oregon Supreme Court fulfilled its duty under *Lucas*. The majority complains that the Oregon Supreme Court analyzed this case in the abstract. Maj. Op. at 670. The state court's opinion reveals, however, that it "addressed" "whether, on the facts of this case, preclusion violated [LaJoie's] rights under the Sixth Amendment." *Lucas*, 500 U.S. at 153, 111 S.Ct. 1743. For instance, the Oregon Supreme Court wrote in the first paragraph, "[u]nder the *specific facts presented here*, we hold that such a failure [to comply with the statute's notice provision] does . . . require [preclusion] and that the requirement is constitutional." *State v. Lajoie*, 316 Or. 63, 849 P.2d 479, 481 (1993) (emphasis

added). It again made clear that it had taken into account the facts of LaJoie's case when it wrote in another section of its opinion, "[w]e next consider the sub-constitutional question whether OEC 412 required preclusion as a mandatory sanction *under the facts of this case*." *Id.* at 484 (emphasis added). The majority's holding that the Oregon Supreme Court failed to "address" the facts of the case cannot be squared with this language in the opinion.

### C. Under a Balancing Approach, the Evidence Was Properly Excluded.

The Oregon Supreme Court properly upheld the trial court's exclusion of the evidence. As the Supreme Court recently noted, "[a] defendant's right to present relevant evidence is not unlimited. A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998) (internal quotation marks omitted). Indeed, the Supreme Court has recognized "the principle that the introduction of relevant evidence can be limited by the State for a 'valid' reason . . ." *Montana v. Egelhoff*, 518 U.S. 37, 53, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996).

In balancing the interests at stake here, I conclude that preclusion did not violate LaJoie's confrontation rights. First of all, the evidence was not material to his defense. As I have explained, none of it provided an alternative explanation for the child's medical condition. Moreover, it would not provide an explanation for her awareness of sexual terminology because VN did not display an uncommon vocabulary for a person of her age.

The State had valid reasons to exclude the evidence in this case and its interests in doing so substantially outweighed LaJoie's. First, I do not agree with the majority that "*because the alleged victim was a ten-year old* at the time of trial, . . . the interest of the victim in eight extra days of repose is far outweighed by the

probativeness of the excluded evidence." Maj. op. at 672 (emphasis added). For all practical purposes, the majority's broad assertion about ten-year olds creates an unprincipled exception to the notice requirement whenever defendants have victimized children. That the majority fails to cite any authority for this general proposition about children, and their interests in repose, is certainly noteworthy. More important, neither the law nor the record in this case can support such an assertion.

Indeed, the Supreme Court has recognized that "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Maryland v. Craig*, 497 U.S. 836, 853, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *see also New York v. Ferber*, 458 U.S. 747, 756, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) ("It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'") (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)). The 15–day notice period serves several compelling interests. First, it permits children to stop worrying about whether they will be forced to describe experiences of sexual abuse. Studies have revealed that testifying about the sexual abuse they have suffered causes child victims addi-

tional trauma.[7] Protecting a child from the additional emotional trauma of having to prepare to recount details of sexual abuse so close to trial is certainly a worthy interest. Second, the notice provision offers the child's guardian the opportunity to seek professional help to assist in coping with the added trauma of having to describe painful events in the courtroom. The fifteen-day period also gives the State a chance to discuss with the victim the truthfulness of the evidence the defendant seeks to put before the jury.

Moreover, as explained in *Tague v. Richards*, 3 F.3d 1133, 1139 (7th Cir.1993), "elimination of the risk of embarrassment furthers the state's interest in encouraging children to report cases of molestation so that the perpetrators can be prosecuted." *See also Richmond v. Embry*, 122 F.3d 866, 874 (10th Cir.1997) (recognizing that "allowing the defense to inquire as to the condoms and the male visitor would not only have subjected the [12 year old] victim to embarrassment and humiliation, but could have had the effect of deterring future victims from reporting sexual assaults."), *cert. denied*, 522 U.S. 1122, 118 S.Ct. 1065, 140 L.Ed.2d 126 (1998). Thus, the Oregon "statute represents a valid legislative determination that [child] rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *Lucas*, 500 U.S. at 149–50, 111 S.Ct. 1743.[8]

---

7. *See* Jessica Liebergott Hamblen and Murray Levine, *The Legal Implications and Emotional Consequences of Sexually Abused Children Testifying as Victim–Witnesses*, 21 Law and Psychol. Rev. 139, 154–72 (1997); Russell Nuce, *Child Sexual Abuse: A New Decade For the Protection of Our Children?*, 39 Emory L.J. 581, 609 (1990) (reporting study in which 73% of child witnesses of sexual abuse who testified at trial experienced behavioral problems while only 57% of those who did not testify suffered such problems); *see also* Jason DeParle, *Early Sex Abuse Hinders Many Women on Welfare*, N.Y. Times, Nov. 28, 1999, at A1 (noting that women who have suffered sexual abuse as children remain ashamed, traumatized, and silent about these experiences well into adulthood).

8. The majority claims that I analyze the substantive, rather than procedural, purposes the rape shield statute serves. Maj. Op. at 671, n. 9. A reading of *Lucas* reveals, however, that the Supreme Court noted the same reasons I do when it analyzed the constitutionality of applying the notice provision of Michigan's rape shield rule to preclude evidence. Indeed, as I state above, it specifically explained that Michigan's notice-and-hearing requirement in its rape shield rule "represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *Id.* at 150, 111 S.Ct. 1743.

LaJoie's failure to comply with the simple procedural requirements of Oregon's rape shield statute, despite his awareness of the evidence well in advance of the deadline, is also a consideration in the weighing of the interests at stake.[9] The Supreme Court has explained, "[r]elevant evidence may, for example, be excluded on account of a defendant's failure to comply with procedural requirements." *Montana v. Egelhoff,* 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996).[10] The Tenth Circuit has recognized that, in enforcing rape shield statutes, "the existence of the [notice and hearing] requirements and the defendant's failure to follow those procedures are germane to our weighing of interests in this case." *Richmond,* 122 F.3d at 874. The State has an interest in ensuring that parties at trial comply with reasonable procedural rules. That LaJoie knew of the evidence well before the deadline for seeking to admit it is an element in balancing the interests here.

In short, the State's interests in excluding the evidence outweigh LaJoie's. On one side of the scale are the State's interests in protecting the child from revealing what was a tragic history, encouraging victims to come forward and report abuse, and ensuring that defendants like LaJoie comply with notice provisions when they know well in advance of trial the evidence they seek to introduce. On the other is LaJoie's interest in putting before the jury evidence that is minimally relevant, if at all, and confusing. Accordingly, the Oregon Supreme Court reasonably upheld the preclusion of LaJoie's evidence and did not violate his right of confrontation under the Sixth Amendment.

**9.** The Supreme Court has not limited the factors we consider to the ones the majority lists. *Lucas,* 500 U.S. at 149, 111 S.Ct. 1743.

**10.** The Supreme Court has upheld the sanction of preclusion in a number of cases. *See, e.g., Lucas,* 500 U.S. at 153, 111 S.Ct. 1743 ("Failure to comply with [the notice-and-hearing] requirement may in some cases justify even the severe sanction of preclusion.");

### D. *The Error in This Case, If Any, Was Not Sufficiently Prejudicial to Grant Habeas Relief.*

Assuming the Oregon courts committed constitutional error when they decided that exclusion of LaJoie's evidence was proper, I cannot agree that it is so prejudicial that we must grant him a writ of habeas corpus. We sit in habeas corpus proceedings and, according to the majority, must test the prejudice of the error it identifies under a very stringent standard. Applying the Supreme Court's standard in *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the majority believes that this error requires habeas relief. Given the evidence against LaJoie, it does not.

The evidence against LaJoie was overwhelming. VN testified that he molested and raped her almost everyday. Three Children Services Division counselors all testified about VN's consistent out-of-court statements. A police officer and doctor also testified that VN offered them substantially similar descriptions of LaJoie's crimes against her. A teacher during the time she lived with LaJoie recounted VN's frequent complaints that it "hurt down there." All of this testimony comported, moreover, with the expert's medical evidence indicating that VN had suffered repetitive sexual injuries.

Considering the record, the value of the evidence LaJoie sought to introduce was minimal at best. Had the trial court permitted him to introduce evidence of VN's history of abuse, jurors would have learned that three people had assaulted her, but never penetrated her. They would have also learned that the rape by

*Taylor v. Illinois,* 484 U.S. 400, 416–17, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (upholding preclusion as sanction where defendant's attorney deliberately violates court's discovery order); *United States v. Nobles,* 422 U.S. 225, 241, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ("The court's preclusion sanction was an entirely proper method of assuring compliance with its order.").

her mother's boyfriend could account for only one injury, not repetitive sexual injuries. The exclusion of this evidence did not cause LaJoie sufficient prejudice to warrant granting a writ of habeas corpus.

This is particularly true given that jurors learned at several points about VN's extensive history of sexual abuse by others, a fact the majority fails to address anywhere in its opinion. What I stated earlier is worth repeating in determining whether the error the majority identifies requires habeas relief: although the jury did not hear the gory details, it did learn that VN had an extensive history of sexual abuse by others. A witness told the jury that VN attended a counseling group for abused children before she moved in with LaJoie. Jurors heard a stipulation describing one incident in which a relative slipped his hands into her shorts and "touched her front." They also learned that a teenaged boy had once forcibly pulled down her pants and stared. Finally, the jury heard testimony that LaJoie was the "first," rather than the only one, to do "bad touch." Hearing the gory details of these incidents of sexual abuse would not have made the difference the majority believes it would.

The Seventh Circuit's opinion in *Tague v. Richards*, 3 F.3d at 1140, which the petitioner's lawyer cited for the first time at oral argument, is instructive on the question of whether the trial court's error, if any, warrants habeas relief. Unlike in this case, the evidence the trial court excluded in *Tague* would have given jurors an alternative explanation for the child's medical condition. Although the court of appeals held that preclusion of this directly contradictory evidence violated the petitioner's Sixth Amendment right, the court held that it was not sufficiently prejudicial to obtain habeas relief. In so holding, the court reasoned:

> While the excluded cross-examination would have established another possible source of the condition of A.T.'s hymen, we do not believe, in light of the other evidence, that it had an "injurious effect of influence" on his trial. The victim testified with great detail that on three separate instances Tague sexually attacked her. A.T.'s mother, her school counselor, and the welfare department case worker all testified that A.T. recited substantially similar versions of the incidents to them, reinforcing A.T.'s credibility. In addition, her allegations were supported by her mother's testimony that placed her at Tague's home on August 23 or 24, the weekend of one of the alleged incidents.

*Id.* at 1140. Given the overwhelming evidence against LaJoie, in the form of testimony from the victim, three counselors, a teacher, a detective, a doctor, and a medical expert, whatever error the trial court committed in excluding the evidence does not satisfy the prejudice standard the majority adopts to grant LaJoie relief from his conviction.

## IV. *Conclusion*

I dissent from the majority's ruling requiring the district court to grant LaJoie a writ of habeas corpus. None of the evidence LaJoie sought to introduce was relevant. Assuming that it was, it was properly excluded under the Supreme Court's holding in *Lucas*. Finally, the error the majority believes occurred does not warrant habeas relief. We should therefore affirm the district court's ruling denying LaJoie relief from his conviction for rape, sodomy, and sexual abuse of VN in the first degree.