

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## JOSEPH MARC THOMAS DUENAS CASTRO, JR.,
**aka Joseph Marc Castro, Jr., aka Joseph Mark Thomas Duenas Castro Jr.,**
**aka Joseph Mark Castro, Jr., aka Joseph M.T.D. Castro, aka Joey,**
Defendant-Appellant.

Supreme Court Case No. CRA23-004
Superior Court Case No. CF0504-21

## OPINION

## Cite as: 2025 Guam 9

Appeal from the Superior Court of Guam
Argued and submitted on November 17, 2023
Hagåtña, Guam

Appearing for Defendant-Appellant:
William Benjamin Pole, *Esq*.
Law Offices of William B. Pole, P.C.
456 W. O'Brien Dr., Ste. 104
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Christine Santos Tenorio, *Esq*.
Assistant Attorney General
Office of the Attorney General
General Crimes Division
134 W. Soledad Ave., Ste. 301
Hagåtña, GU 96910



**E-Received**
12/15/2025 1:09:25 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

[1]     Defendant-Appellant Joseph Marc Thomas Duenas Castro, Jr., appeals his conviction on two charges of criminal sexual conduct, including one count in the first degree ("CSC I") for sexual penetration and three counts in the second degree ("CSC II") for sexual contact.  Castro was sentenced to thirty years' imprisonment for the CSC I charge and ten years' imprisonment for each of the three CSC II counts, to be served concurrently with the CSC I sentence.

[2]     Castro's challenge focuses on (1) whether there is sufficient evidence to support all four convictions; (2) whether Guam law prohibits conviction for both CSC I and CSC II where the charges are based on the same underlying sexual act, *not* separate in time; (3) whether the language defining "sexual contact" must be incorporated with the essential element instructions for CSC II if it is provided elsewhere in the jury instructions; and (4) whether the court erred when it prohibited Castro from eliciting testimony about a sexual relationship between the victim and a third-party witness, notwithstanding Guam's rape shield statute.  We reverse in part and affirm in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[3]     Castro was initially indicted on two counts of CSC I and four counts of CSC II, involving a female minor identified as K.B.  All counts allegedly occurred between January 1, 2019, and December 31, 2019.  K.B. was between nine and ten years old at the time of the alleged acts.

[4]     Both of the CSC I charges were for sexual penetration, "to wit: cunnilingus," occurring at different times during the charging period.  Record on Appeal ("RA"), tab 9 at 2 (Indictment, Oct. 21, 2021).  These charges were mirrored by two CSC II charges alleging that Castro "caused his

mouth to touch the primary genital area of" a minor, also occurring at different times. *Id.* at 2-3 (Second Charge, Counts One and Two). Two other CSC II charges alleged that Castro caused his hand to touch K.B.'s primary genitals (Second Charge, Count Three) and caused K.B.'s hand to touch his primary genital area (Second Charge, Count Four). *Id.* at 3-4. Castro testified in his defense and denied the charges.

[5]       K.B. testified about two instances involving CSC that took place sometime during 2019. The first instance occurred in a parking lot at Apaca Point Beach, and the second occurred later in a bedroom at her family's residence. Throughout the testimony, K.B. used the language "private area" to describe both her and Castro's genitals. Transcript ("Tr.") at 105-15 (Jury Trial Day 1, June 28, 2022). The following testimony was presented on direct examination to establish what K.B. meant by "private area":

> Q       Okay. When you say he made you touch "his area", what area are you talking about?
>
> A       His private area.
>
> Q       Now, when you say -- let me give you some different language and you tell me which one works, okay? All right. When you say his "private area", do you mean his penis?
>
> A       Yes.
>
> Q       Okay. Does it also mean his butt?
>
> A       No.
>
> Q       So we're just talking about his penis?
>
> A       Yes.
>
> Q       Okay. And when you say your private area, are you talking about your breasts?
>
> A       No.
>
> Q       Are you talking about your vagina?
>
> A       Yes.

*Id.* at 109.

**[6]**      As to the conduct at Apaca Point, K.B. testified that one day, Castro came home and told her they were "gonna go and get [her] nana some water." *Id.* at 106. Instead of going to get water, Castro took K.B. to Apaca Point, which she described as "pretty hidden." *Id.* Then K.B. claimed, "He made me touch his area and he -- he touched mine." *Id.* at 109. K.B. said Castro removed his pants and made her touch his "private area" when "he took my hand, and he placed it on his area, and he started moving my hand with his." *Id.* at 110. When asked how she was moving her hand, K.B. said, "[H]e made me grip and he kept moving my hand up and down," gesturing with her hand in a straight up and down motion. *Id.* On cross-examination, K.B. said, "At one point it was with one hand and then two hands." *Id.* at 132-33.

**[7]**      Also, on cross-examination, K.B. stated that she did not know what Castro's penis looked like because she did not look, and her eyes were closed. *Id.* at 133. Defense counsel asked K.B. if she had touched Castro's penis for an hour, and K.B. explained, "I don't think it was that long." *Id.* Defense counsel asked K.B. what color Castro's penis was, whether it was warm or cold, and whether she felt any hair, and K.B. responded, "I don't know." *Id.*

**[8]**      K.B. also claimed Castro started touching her "private area." *Id.* at 110-11. She said, "[H]e told me to take my pants off and my panty, and he -- he put his hand near -- on it, and he did -- started touching it." *Id.* at 110. During this testimony, K.B. clarified again that "private area" meant "vagina." *Id.* at 111. K.B. said Castro stopped touching her when a car drove into the parking lot and a family got out. *Id.* at 133-34. Then Castro drove them back to the house. *Id.* at 134.

**[9]**      The second instance of CSC happened sometime in 2019, after the incident at the beach, and took place in a bedroom at K.B.'s family home. *Id.* at 112. While K.B. was playing in her bedroom with her sisters, Castro entered the room and told the two younger girls to go outside so

he could speak with K.B. *Id.* at 112-13. Then Castro closed the door and told K.B. to sit on the floor "against the door." *Id.* at 113. K.B. testified:

> A        And he told me to take my pants off, and he told me to take my panty off. And he -- he -- I closed my legs and he told me to open my legs, but I didn't want to, so he opened them. He did it himself. And he went down to my area.
>
> Q        What do you mean he went down to your area? What do you mean by that?
>
> A        He brought his face to my private area and he started licking me.
>
> Q        What do you mean by licking you?
>
> A        Like, licking my area.

*Id.* The People asked K.B. for a second time what she meant by "he licked my area":

> A        Like, he started licking me towards my private part and (heavy sigh) -- I'm not sure how to explain it.
>
> Q        Was he licking your private part?
>
> A        Yes.
>
> Q        And do you have any -- how long that went on?
>
> A        No.

*Id.* at 114-15. K.B. further testified that Castro told her to put her clothes back on, and then Castro exited the room. *Id.* at 113-14. K.B. explained that Castro told her not to say anything to anyone or that they would both get in trouble. *Id.* at 115.

[10]     When the police interviewed K.B., she said she told two friends about what happened: a female classmate identified as P.B. and a male classmate identified as M.R. *Id.* at 129. No Healing Hearts report was made in this case since it was reported more than 72 hours after either incident. *Id.* at 20. K.B. also told police she dated P.B. and M.R. at different times but that she did not have a sexual relationship with either of them. *Id.* P.B. was one of K.B.'s classmates at her middle school, and the two met in the sixth grade. Tr. at 38 (Jury Trial Day 2, June 29, 2022). Testifying for the defense, P.B. said that sometime in 2020, K.B. told P.B. that someone had touched her, but

K.B. did not divulge who the person was. *Id.* at 48. During cross-examination by the People, M.R. said that K.B. told him that "when [Castro] was still living with [K.B.] that they were on a field trip, or they went to run an errand, like, go get -- going to the water store. And the back road to the Naval Base, the little beach there, the -- she said that he asked her to either touch him or he would touch her." *Id.* at 61.

[11]     Defense counsel also confirmed with K.B. that she told the police she did not have sexual relations with M.R. during their relationship, which occurred after the alleged assault. Tr. at 129 (Jury Trial Day 1). Rather than impeach K.B. on this issue, defense counsel called M.R. during its case-in-chief and asked M.R. whether he had sexual intercourse with K.B. Tr. at 55 (Jury Trial Day 2). The People objected to the line of questioning for relevance. *Id.* Defense counsel claimed the questioning was relevant based on K.B.'s inability to describe the sexual encounter with Castro, including details about his penis, such as the color, temperature, or presence of hair. *Id.* Defense counsel claimed the questions were founded on online conversations between K.B. and M.R., apparently of a sexual nature, and were shared with the defense team in discovery. *Id.* The trial court sustained the People's objection that the elicited testimony was not relevant. *Id.* at 55-56 ("The objection is as to relevance. She's never said she didn't know what a penis looked like. She said she didn't know the defendant's penis.").

[12]     At the close of the People's case, Castro moved to acquit, arguing there was insufficient evidence to support the charges. Castro argued for the dismissal of one CSC I and one CSC II charge involving cunnilingus and oral sexual contact, respectively, because there was no testimony involving these acts to sustain them. Tr. at 144 (Jury Trial Day 1) ("[S]he did not testify about any cunnilingus while she was . . . [at] the beach. She only testified about cunnilingus that occurred in her bedroom in the house."). The People agreed, and those charges were dismissed.

**[13]**     Castro then moved to acquit on the remaining charges, which the People opposed. Referring to the later occurrence in the bedroom, Castro argued that either the CSC I or CSC II charge should be dismissed because "cunnilingus only occurred one time, according to K.B." *Id.* at 148. The People opposed this even though they acknowledged that the two charges involved the same underlying, uninterrupted sexual act. *Id.* ("Second Charge, Count One, the mouth would have to touch the vagina, and that's what it talks about, 'causing his mouth to touch the primary genital area'. And I would argue that goes -- excuse the language, but it goes hand in hand with the cunnilingus charge . . . .").

**[14]**     The amended indictment had four counts, including one CSC I charge and three CSC II charges. The CSC I charge and one of the CSC II charges stemming from the later incident in the bedroom involved the same underlying, uninterrupted sexual act. The remaining two CSC II charges concerned the earlier conduct at the beach. The jury returned a guilty verdict against Castro on all charges. Judgment was entered, and Castro timely filed his appeal.

## II. JURISDICTION

**[15]**     This court has jurisdiction over an appeal from a final judgment of conviction. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-47 (2025)); 7 GCA §§ 3107(b), 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

**[16]**     Claims of insufficient evidence are matters of law and are reviewed *de novo*. *People v. Flores*, 2009 Guam 22 ¶ 10 ("If a defendant preserves the claim of sufficiency of the evidence by filing a motion for acquittal, the standard of review on appeal is *de novo*." (quoting *People v. Maysho*, 2005 Guam 4 ¶ 6)).

[17]     An alleged double jeopardy violation is a question of law reviewed *de novo*.  *People v. San Nicolas*, 2001 Guam 4 ¶ 8.  "The legality of [a] sentence is also reviewed *de novo*."  *Id.*

[18]     "Jury instructions are reviewed for plain error when no objection to the instructions was made at trial."  *People v. Felder*, 2012 Guam 8 ¶ 8.

[19]     Evidentiary rulings are reviewed for abuse of discretion.  *People v. De Soto*, 2016 Guam 12 ¶ 19.  Even if a trial court abused its discretion in excluding evidence, however, the evidentiary ruling will not be reversed absent prejudice affecting the verdict.  *People v. Camaddu*, 2015 Guam 2 ¶ 9.  The proper standard for evaluating whether reversal is required is the harmless error standard.  *People v. Pugh*, 2018 Guam 14 ¶ 16.

## IV.  ANALYSIS

### A.  Sufficiency of the Evidence

[20]     If the prosecution fails to prove beyond a reasonable doubt a criminal defendant's guilt on every element of a charged crime, the defendant has the right to acquittal.  *People v. Riosen*, 2023 Guam 23 ¶ 18 (citing *People v. Perry*, 2009 Guam 4 ¶ 33).  "Once a guilty verdict is rendered, the defendant's prior presumption of innocence is replaced with a presumption of guilt."  *Id.* (citing *People v. Moses*, 2022 Guam 17 ¶ 17; *People v. George*, 2012 Guam 22 ¶ 50 (per curiam)).  Therefore, when reviewing the sufficiency of the evidence to support a criminal conviction, this court asks "whether the evidence in the record could reasonably support a finding of guilty beyond a reasonable doubt."  *People v. Taitano*, 2015 Guam 33 ¶ 9 (quoting *People v. Root*, 2005 Guam 16 ¶ 33).

[21]     Although this court's review of evidentiary sufficiency is *de novo*, it is "'highly deferential' to the findings of the trier of fact."  *People v. Rachulap*, 2022 Guam 9 ¶ 12 (quoting *People v. Song*, 2021 Guam 14 ¶ 18).  "'[W]e review the evidence in the light most favorable to the People

and determine whether any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt,' affording to the People 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'" *Id.* (alterations in original) (quoting *People v. Wia*, 2020 Guam 17 ¶ 35). For this inquiry, this court is guided by the Legislature's directive that in cases involving sex abuse, "[t]he testimony of a victim need not be corroborated . . . ." 9 GCA § 25.40 (2005). Likewise, this court affords great deference to the jury's assessment of the witness's credibility, so long as any rational juror could reach the same conclusion. *People v. Song*, 2012 Guam 21 ¶ 29 ("It is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005))); *People v. Taisacan*, 2018 Guam 23 ¶ 17 ("[I]f there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury." (alteration in original) (quoting *Song*, 2012 Guam 21 ¶ 29)); *People v. Jesus*, 2009 Guam 2 ¶ 61 ("The appellate court cannot merely substitute its judgment for that of the jury.").

**[22]** But this court has also emphasized that "a prosecutor has a duty 'to charge only those offenses she believes she can prove beyond a reasonable doubt.'" *Riosen*, 2023 Guam 23 ¶ 27 n.5 (quoting *People v. Lopez*, 462 P.3d 499, 512 (Cal. 2020)). And we have repeated the warning that:

> We recognize that testifying about a sexual assault is traumatic for the victim. But the State has the burden of "proving by evidence every essential element" of the charged crime. We urge prosecutors to adduce specific testimony regarding each and every element of such crimes to ensure that a jury's guilty verdict rests not on speculation but on clear evidence sufficient to find beyond a reasonable doubt that the defendant committed the crime charged.

*Id.* (quoting *State v. Patterson*, 2017 UT App 194, ¶ 12 n.2, 407 P.3d 1002).

**[23]** Castro claims there was insufficient evidence to establish sexual penetration because K.B.'s uncorroborated testimony was vague and failed to establish the element of penetration for the CSC I charge concerning the conduct in the bedroom. Appellant's Br. at 15-19 (Aug. 2, 2023). Castro also claims the People failed to establish the *mens rea* requirement "for sexual gratification or arousal" for the CSC II charge, concerning testimony about conduct in K.B.'s bedroom. *Id.* at 14-15; *see also* 9 GCA § 25.10(a)(8) (2005); Tr. 106-12, 113-115, 144 (Jury Trial Day 1) (oral motion for acquittal at close of People's case-in-chief). We disagree with both assertions. There was sufficient evidence to establish sexual contact that could be reasonably construed as being for the purpose of sexual arousal or gratification for each of the three CSC II convictions. Likewise, there was sufficient evidence to establish "cunnilingus," which is one of the listed acts in the definition for CSC I "sexual penetration." *See* 9 GCA § 25.10(a)(9) (2005).

**[24]** In Guam, a person is guilty of CSC I "if he or she engages in sexual penetration with the victim" and any one of seven listed circumstances exists. 9 GCA § 25.15(a) (as amended by Guam Pub. L. 32-012:2 (Apr. 11, 2013)). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." 9 GCA § 25.10(a)(9) (2005).

**[25]** A person is guilty of CSC II if "the person engages in sexual contact with another person" and any one of seven listed circumstances exists. 9 GCA § 25.20(a) (as amended by P.L. 32-012:2 (Apr. 11, 2013)). "Sexual contact" is defined as including "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." 9 GCA § 25.10(a)(8) (2005).

[26]    While there was no direct third-party witness to the conduct, nor was there a Healing Hearts report because the conduct was reported more than 72 hours after each incident, K.B. testified that she told at least two other people, M.R. and P.B.  When adopting the CSC statutory scheme, the Legislature made clear that "[t]he testimony of a victim need not be corroborated . . . ."  9 GCA § 25.40.  Applying this directive, this court has reiterated that "a victim's testimony alone can support a criminal sexual conduct conviction."  *Riosen*, 2023 Guam 23 ¶ 21 (quoting *People v. Bosi*, 2022 Guam 15 ¶ 20); *see, e.g.*, *People v. Perez*, 2015 Guam 10 ¶ 36; *People v. Flores*, 2004 Guam 18 ¶ 31.

[27]    Thus, the absence of a Healing Hearts report or direct third-party witnesses is not fatal to the People's case.  As a matter of public policy, requiring direct third-party corroboration would make it impossible to prosecute and hold to account a large share of CSC cases, which rarely result in demonstrable permanent physical injury or involve a third-party witness to the conduct.  Many of these cases involve young, vulnerable victims like K.B., who cannot articulate the abuse until months or sometimes years later.  *See, e.g.*, *Taitano*, 2015 Guam 33 ¶ 3.

### 1.  There is sufficient evidence to support both CSC II convictions involving conduct at the beach

[28]    Castro argues that there was no evidence that sexual contact was for the purpose of sexual gratification.  Appellant's Br. at 27; *see also* 9 GCA § 25.10(a)(8) (2005).  The People claim that whether an act was committed for the purpose of sexual arousal or gratification can be inferred from circumstantial evidence.  Appellee's Br. at 21 (Oct. 6, 2023).  We agree with the People.  In the prosecution of CSC II cases, we have reiterated that "[s]pecific evidence of sexual arousal or gratification is not required."  *People v. Callahan*, 2022 Guam 13 ¶ 20; *see also People v. Morales*, 2022 Guam 1 ¶ 75 (same).  Rather, "the trier of fact may infer [the defendant's] motivation based on the defendant's actions."  *People v. Enriquez*, 2014 Guam 11 ¶ 28 (citing *State v. Cobb*, 610

N.E.2d 1009, 1013 (Ohio Ct. App. 1991)). "If the trier of fact finds that the 'defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved.'" *Id.* (quoting *Cobb*, 610 N.E.2d at 1013). In *Enriquez*, this court found sufficient evidence of sexual gratification when the defendant rubbed the victim's genitals when they were alone in a car but stopped touching when a third person entered the vehicle. *Id.* ¶¶ 28, 53.

[29] The victim's testimony at trial established that Castro drove K.B. to an isolated beach parking lot and committed two acts of sexual contact. Tr. at 109 (Jury Trial Day 1) ("[H]e made me do things that I didn't want to do. . . . He made me touch his area and he -- he touched mine."). K.B. clarified that she meant "penis" when she was referring to Castro's private area and "vagina" when she was talking about her private area. *Id.* For the charge that Castro caused K.B.'s hand to touch his penis, K.B. testified that Castro removed his pants and took her hand and placed it on his penis, and "started moving my hand with his." *Id.* at 109-10. She said Castro "made me grip and he kept moving my hand up and down." *Id.* at 110. Based on this testimony, a jury could reasonably infer that Castro caused K.B.'s hand to touch and grip his penis for the purpose of sexual arousal or gratification. *See* 9 GCA § 25.10(a)(8) (2005); *Enriquez*, 2014 Guam 11 ¶ 28.

[30] K.B. testified that right after this act, Castro caused his hand to touch her vagina: "He -- he told me to take my pants off and my panty, and he -- he put his hand near -- on it, and he did -- started touching it." Tr. at 110 (Jury Trial Day 1). When another car pulled into the parking lot and a family started getting out of their car, K.B. testified that Castro stopped touching her and "told me to put my stuff back on, and he started to put his stuff back on, and we left." *Id.* at 114, 133-34. Based on K.B.'s testimony, a jury could also reasonably infer this touching was for the purpose of sexual arousal or gratification. *See* 9 GCA § 25.10(a)(8) (2005); *Enriquez*, 2014 Guam

¶ 28. Viewing the evidence in the light most favorable to the People and drawing all reasonable inferences therefrom, a rational jury could have found that the conduct was for sexual arousal or gratification through either direct testimony or permissible inferential reasoning beyond a reasonable doubt. *See Rachulap*, 2022 Guam 9 ¶ 12; *Taitano*, 2015 Guam 33 ¶ 9. The CSC II convictions stemming from the conduct at the beach are affirmed.

### 2. While there is sufficient evidence for both the CSC I and CSC II charges in the bedroom, there is insufficient evidence to prove two separate and distinct acts during that instance

[31]     For the CSC I charge, Castro claims the People's failure to develop what K.B. "meant by vagina or providing evidence on what the minor understood the vagina includes prevents a rational Jury to find beyond [r]easonable doubt that penetration occurred." Appellant's Br. at 17. Although Castro acknowledges that K.B. clarified "private area" meant her vagina, he claims there was "no further break down of anatomy for the Jury." *Id.* at 18.

[32]     Castro offers Merriam-Webster's definition of cunnilingus, claiming that "[c]unnilingus is actually the oral stimulation of the vulva or clitoris," to support the argument that the victim's reference to "vagina" is insufficient. Appellant's Br. at 16.[1] Castro does not offer any legal authority adopting this definition or similar descriptive language requiring the "sexual stimulation" of a sexual assault victim. Indeed, Guam's criminal sexual conduct statutes define "sexual penetration" broadly to include various forms of intrusion—however slight—into genital or anal openings, without requiring emission of semen. 9 GCA § 25.10(a)(9) (2005). This definition provides a sufficient legal framework for addressing sexual penetration without requiring the highly technical definitions of "vagina" and "cunnilingus" that Castro proffers.

---

[1] *Cunnilingus*, Merriam-Webster, https://www.merriam-webster.com/dictionary/cunnilingus [https://perma .cc/V3QZ-B7HX].

**[33]**    Our case law is clear that practical and contextual understandings of anatomy are sufficient, and technical definitions are not required. *See, e.g.*, *Enriquez*, 2014 Guam 11 ¶ 19 ("While evidence of sexual penetration must be present, there are no magic words that need to be stated at trial. The element of penetration may be inferred based on a totality of evidence."); *People v. Mendiola*, 2014 Guam 17 ¶ 22 ("Although specificity when testifying is always preferable, a general description of the events does not necessarily defeat any possibility that penetration occurred. It is not reasonable to expect a fourteen-year-old victim to speak as knowledgeably about her anatomical structure as an adult."); *Riosen*, 2023 Guam 23 ¶¶ 22-23 (clarifying that victim's use of terms like "rape" or descriptions of the act could support finding of penetration, even without explicit anatomical detail); *Moses*, 2022 Guam 17 ¶ 60 ("The term 'rape' is the common English word for the conduct charged in Guam as 'first-degree criminal sexual conduct.'" (quoting *People v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995))).

**[34]**    We echo the Supreme Court of North Carolina, which has rejected assertions similar to Castro's, concerning the same statutory language:

> We are satisfied the Legislature did not intend that the vulva in its entirety or the clitoris specifically must be stimulated in order for cunnilingus to occur. To adopt this view would saddle the criminal law with hypertechnical distinctions and the prosecution with overly complex and in some cases impossible burdens of proof. We think, rather, that given the possible interpretations of the word as ordinarily used, the Legislature intended to adopt that usage which would avoid these difficulties. We conclude, therefore, that the Legislature intended by its use of the word cunnilingus to mean stimulation by the tongue or lips of any part of a woman's genitalia.
>
> . . . . If the Legislature intended cunnilingus to require penetration by the lips or tongue, then its inclusion in the statute as a form of sexual act would have been superfluous because, the lips or tongue being themselves objects, the act would have been prohibited under the clause dealing specifically with penetrations.

*State v. Ludlum*, 281 S.E.2d 159, 162-63 (N.C. 1981); *see also People v. Legg*, 494 N.W.2d 797, 798 (Mich. Ct. App. 1992) (per curiam) (concluding sufficient evidence of cunnilingus when

victim stated defendant touched "with his mouth" the "part [of her body] that I go to the bathroom with" (alteration in original)); *State v. Beaulieu*, 674 A.2d 377, 377 (R.I. 1996) (per curiam) (deciding testimony that defendant "licked her vagina" sufficient to establish cunnilingus).

[35]     Castro also emphasizes the lack of forensic evaluations or other credible evidence to establish cunnilingus for the jury.  Appellant's Br. at 13-14, 18.  The People claim that "the victim's reference to vagina is sufficient to describe the body part on which cunnilingus is performed."  Appellee's Br. at 6.  We agree with the People.  *See Enriquez*, 2014 Guam 11 ¶ 15 ("The breach of any part of the vagina, including the labia majora, is sufficient to constitute penetration.").  K.B. testified that Castro came into her room while she was playing with her sisters, asked the other girls to leave, then told her to sit against the door and he started "licking my area." Tr. at 113 (Jury Trial Day 1).  Then, during follow-up questioning, she said he "started licking me towards my private part," and claimed, "I'm not sure how to explain it."  *Id.* at 115; *see also* Appellant's Br. at 13.  Castro claims that the ambiguity between these statements would have prevented a rational jury from finding sexual contact or cunnilingus beyond a reasonable doubt. Appellant's Br. at 15-19.  We disagree.

[36]     Castro's challenge to the sufficiency of the evidence echoes the same meritless proposition we have rejected before: the victim did not have to say the magic words "penetration" or "intercourse" to establish that element of CSC I beyond a reasonable doubt.  *See Riosen*, 2023 Guam 23 ¶ 22; *Enriquez*, 2014 Guam 11 ¶ 19; *Mendiola*, 2014 Guam 17 ¶ 21; *People v. Aguon*, 2020 Guam 24 ¶ 17.  K.B.'s testimony that Castro licked her vagina is sufficient to establish the act of cunnilingus for the CSC I charge of sexual penetration beyond a reasonable doubt.

[37]     In *People v. Camacho*, this court found sufficient evidence of penetration when the 14-year-old victim stated that the defendant "touched her 'private spot.'" 2016 Guam 37 ¶ 44.  Unlike

here, in both *Camacho* and *Mendiola*, after disclosing the conduct to family members, the victims were taken to Healing Hearts Crisis Center—a clinic for sexual assault survivors—resulting in reports and interviews that were entered into evidence. *See Camacho*, 2016 Guam 37 ¶ 8; *Mendiola*, 2014 Guam 17 ¶¶ 6-7. While this testimony supplied valuable circumstantial evidence to establish sexual penetration, "[t]he testimony of a victim need not be corroborated" in CSC cases. *See* 9 GCA § 25.40.

[38]   The evidence is also sufficient to establish the CSC II charge that Castro intentionally caused his mouth to touch the primary genital area of a minor, and such contact "can reasonably be construed as being for the purpose of sexual arousal or gratification." *See* 9 GCA § 25.10(a)(8) (2005). Based on the record before us, we hold that Castro's actions at the beach and the physical acts by him necessary to perform cunnilingus in the bedroom could be reasonably construed by a rational jury as being for the purpose of his sexual arousal or gratification. *See id.*; *Rachulap*, 2022 Guam 9 ¶ 12; *Taitano*, 2015 Guam 33 ¶ 9

[39]   Although we find there was sufficient evidence for both the CSC I and CSC II charges in the bedroom, there was insufficient evidence to prove two separate and distinct acts during that instance. Therefore, we must consider whether convicting Castro for both crimes violates the prohibition against imposing multiple punishments for the same offense (double jeopardy) as it has been adopted by the Legislature under 9 GCA § 1.22.

## B. Title 9 GCA § 1.22(e) Prohibits a Defendant from Being Convicted of Both Sexual Penetration and Sexual Contact When the Charges Arise from the Same Underlying Conduct

[40]   Castro claims that his dual conviction for both the CSC I and CSC II charges in the bedroom violates the prohibition against double jeopardy because "[t]here was only one course of conduct provided at trial for the allegation that the defendant used his tongue sexually . . . ."

Appellant's Br. at 28-30 (citing 9 GCA § 1.22(e) (2005)); *see generally People v. Palisoc*, 2002 Guam 9 ¶ 36. Castro argues that a defendant cannot be convicted for both CSC I and CSC II where the charges involve the same uninterrupted sexual act and are based on identical evidence submitted at trial. Appellant's Br. at 29 ("At best the Government provided evidence of one continues [sic] act."). The People claim, "This court has rejected the notion that a defendant cannot be convicted of both [CSC I] and [CSC II], pursuant to 9 GCA § 1.22." Appellee's Br. at 13 (citing *People v. Santos*, 2020 Guam 5; *People v. Cummins*, 2010 Guam 19; *People v. Songeni*, 2010 Guam 20). We disagree with the People. Although this court affirmed dual conviction under other subsections of 9 GCA § 1.22, such as subsection 1.22(a), *see, e.g.*, *Cummins*, 2010 Guam 19 ¶¶ 15-24 (holding that CSC II is not a lesser included offense of CSC I under 8 GCA § 105.58(b)(1)), we now answer whether CSC I and CSC II convictions, each based on identical evidence of a single, uninterrupted sexual act, violate subsection 1.22(e).[2]

[41]     The Fifth Amendment of the U.S. Constitution states, "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2; *see also Benton v. Maryland*, 395 U.S. 784, 787 (1969) (holding the Double Jeopardy Clause of the Fifth Amendment applies to the States through the Fourteenth Amendment); 48 U.S.C.A. § 1421b(u) (extending the Fourteenth Amendment Due Process Clause to Guam with "the same force and effect there as in the United States or in any State of the United States"). Similarly, the Organic Act states, "No person shall be subject for the same offense to be twice put in jeopardy of punishment . . . ." 48 U.S.C.A. § 1421b(d). Generally, the Double Jeopardy Clause "serves principally as a restraint on courts and prosecutors"; however, while "[t]he legislature remains free

---

[2] We answered a similar question, outside of the CSC context, in *People v. Aldan*, 2022 Guam 4 ¶¶ 23, 26 (finding that 9 GCA § 1.22(e) prohibits convictions for the same robbery under both 9 GCA § 40.20(a)(2) and 9 GCA § 40.20(a)(3)).

under the Double Jeopardy Clause to define crimes and fix punishments[,] . . . once the legislature has acted courts may not impose more than one punishment for the same offense . . . ." *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The Double Jeopardy Clause "protects against multiple punishments for the same offense." *Id.* (citation omitted). We are concerned with cumulative punishments for the same offense brought in a single prosecution. *See, e.g.*, *Santos*, 2020 Guam 5 ¶ 27 (holding the defendant could not be convicted or sentenced for both CSC I and CSC III for the same act of sexual penetration).

[42]    Generally, federal courts determine whether two crimes are the same offense for double jeopardy purposes by application of the same-element test adopted by the U.S. Supreme Court in *Blockburger v. United States*: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether the provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932). In *Missouri v. Hunter*, the Supreme Court held that legislative intent controls whether cumulative punishments should be imposed in the same prosecution, observing that "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." 459 U.S. 359, 366 (1983); *see also Albernaz v. United States*, 450 U.S. 333, 340 (1981) (stating that the *Blockburger* test "serves as a means of discerning congressional purpose [and] *should not be controlling* where, for example, there is a clear indication of contrary legislative intent" (emphasis added)); *Brown*, 432 U.S. at 165.[3]    Thus,

---

[3] As pointed out by the dissent in *Missouri v. Hunter*, 459 U.S. 359 (1983), the rule adopted by the majority in *Blockburger v. United States*, 284 U.S. 299 (1932), significantly undermines federal double jeopardy protections and empowers state lawmakers to legislate around the rule. *Hunter*, 459 U.S. at 373 (Marshall, J., dissenting) ("[T]he Double Jeopardy Clause cannot reasonably be interpreted to leave legislatures completely free to subject a defendant to the risk of multiple punishment on the basis of a single criminal transaction."). The *Blockburger* test has faced significant criticism from legal scholars, who argue that its "mechanical application" often leads to inconsistent results and fails to account for the principles underlying double jeopardy protections. *See, e.g.*, Michael H. Hoffheimer, *The Rise and Fall of Lesser Included Offenses*, 36 Rutgers L.J. 351, 367 n.39 (2005) ("While the (elements) test may seem

legislative intent is the guiding principle when determining whether cumulative punishments may be imposed.

**[43]**     We have recognized that the "Guam Legislature has set forth what is arguably a broader test than the [*Blockburger*] same-elements test for determining whether an offense is included in another, incorporating elements from the Model Penal Code." *See People v. Quinata*, 2010 Guam 17 ¶ 41 n.6 (citing 9 GCA § 1.22(a); 8 GCA § 105.58(b) (2005)).[4]   Section 1.22 reflects the Legislature's general intent to bar cumulative punishments when the offenses fall into one of five statutorily-defined exceptions:

> When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.  He may not, however, be convicted of more than one offense if:
>
> (a) one offense is included in the other as defined in § 105.58 of the Criminal Procedure Code;
>
> . . . ; or
>
> (e) *the offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.*

9 GCA § 1.22 (emphasis added).  The statutes that define CSC I and CSC II—subsections 25.15(a) and 25.20(a), respectively—are silent on whether the Legislature intended cumulative punishments for these offenses.  However, *Blockburger* is not applicable here because, as this court has previously held, CSC II requires proof of a scienter element—that the defendant acted with

---

simple enough, and be capable of almost mechanical application, in practice it has proved more difficult." (quoting Theodore E. Lauer, *The Wyoming Criminal Code Revisited: Reflections After Fifteen Years*, 33 Land & Water L. Rev. 523, 532 (1998))); George C. Thomas III, *Double Jeopardy: The History, The Law* 176 (1998) (observing that "Blockburger is driven . . . by its mechanical nature, rather than common sense.").

[4] There are "similarities between 8 GCA § 105.58(b)(1)'s "same or less facts" test and the test established in *Blockburger*." *People v. Taisacan*, 2023 Guam 19 ¶ 43; *see also People v. Aguirre*, 2004 Guam 21 ¶ 17 n.2 (explaining that 8 GCA § 105.58(b)(1)'s "limitation on convictions for the same offense is similar to the second part of the [*Blockburger*] test").

sexual purpose—while CSC I has no such requirement. *Cummins*, 2010 Guam 19 ¶ 19 (concluding CSC I does not include a scienter element and CSC II requires proof of scienter); *Songeni*, 2010 Guam 20 ¶¶ 19-22 ("Under these definitions, [CSC II] contains a *greater* quantum of culpability than [CSC I] (which is essentially a status crime), as the relevant [CSC II] statute[] contain[s] additional *mens rea* elements not found in [CSC I]."). In the absence of such express legislative intent, we look to section 1.22.

[44] We have previously held that "9 GCA § 1.22(e) prohibits multiple convictions [for] more than one offense when 'the offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.'" *People v. Afaisen*, 2016 Guam 31 ¶ 34 (quoting 9 GCA § 1.22(e)). When an indictment charges two violations of the same statute for seemingly related conduct, we engage in a two-part analysis to evaluate multiplicity. *See People v. Martin*, 2018 Guam 7 ¶ 15; *see also People v. Aldan*, 2022 Guam 4 ¶ 24 (evaluating for multiplicity where indictment charged violations of two different subsections of same statute, and defendant's actions formed an uninterrupted, continuing course of conduct). The amended indictment charged CSC I and CSC II, subsections 25.15(a)(1) and (2) and 25.20(a)(1) and (2), respectively. First, we determine "what act the legislature intended as the 'unit of prosecution' under the statute," which requires asking "whether the conduct at issue was intended to give rise to more than one offense under the same [statutory] provision." *Martin*, 2018 Guam 7 ¶ 15 (alteration in original) (quoting *San Nicolas*, 2001 Guam 4 ¶ 13). We have previously held that the Legislature intended to define the unit of prosecution under the CSC I statute—section 25.15—to be a separate and distinguishable act of penetration. *Id.* ¶ 18. We hold today that the same is true for sexual contact under the CSC II statute—section 25.20.

**[45]**    The second part of the analysis examines "whether 'the conduct underlying each violation involves a separate and distinct act.'" *Id.* ¶ 16 (quoting *United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1046 (9th Cir. 2002), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135, 1136 (9th Cir. 2010) (per curiam)). "We look to the indictment to evaluate whether the underlying acts, as alleged, were 'separated in time or are of a significantly different nature.'" *Id.* (quoting *State v. Multaler*, 2002 WI 35, ¶ 56, 252 Wis. 2d 54, 643 N.W.2d 437). We have recognized that "[a]cts may be 'different in nature' even when they are the same types of acts as long as each required 'a new volitional departure in the defendant's course of conduct.'" *Id.* (quoting *Multaler*, 2002 WI 35, ¶ 57). Applying this analysis to a provision similar to Guam's subsection 1.22(e), the Kentucky Supreme Court held that separate convictions for first-degree assault and attempted murder violated Kentucky's bar against double jeopardy where both convictions were based on the same instance of stabbing. *Spicer v. Commonwealth*, 442 S.W.3d 26, 33 (Ky. 2014). In rejecting the prosecution's argument that the two offenses could be distinguished as separate acts, the court clarified:

> As the Commonwealth points out, KRS 505.020(*l*)(c) does *not* bar the prosecution or conviction upon multiple offenses arising out of a single course of conduct when the facts establish that two or more *separate and distinct* attacks occurred during the episode of criminal behavior. However, . . . "for multiple convictions to be proper there must have been a cognizable lapse in [the defendant's] course of conduct during which the defendant could have reflected upon his conduct, if only momentarily, and formed the intent to commit additional acts."

*Id.* at 31 (alterations in original) (internal citations omitted); *see also Rodriguez v. State*, 2014 Ark. App. 660, at 12, 449 S.W.3d 306, 314 ("Where there is a single impulse, only one charge lies, but if there are separate impulses, separate charges lie even if all are part of a common stream of action.").

[46]     The People concede that the penetration necessary for CSC I was achieved by way of the same occurrence of the same physical act necessary for CSC II: sexual contact. Appellee's Br. at 14-15. Unlike the earlier two CSC II charges occurring at the beach—where the victim testified she touched the genitals of Castro and Castro touched her genitals—there is no evidence of a "new volitional departure in the defendant's course of conduct" between the act occurring in the bedroom referenced for both of the CSC I and CSC II charges. *See Martin*, 2018 Guam 7 ¶ 16.

[47]     The People argue that because CSC I and CSC II arise out of different statutes and because 9 GCA § 1.22(e) "is intended to question whether multiple convictions of *the same statute* run afoul of double jeopardy protections," the continuing course of conduct analysis is inapplicable. Appellee's Br. at 13-15 (citing *Santos*, 2020 Guam 5). The People further argue that "[t]his court has rejected the notion that a defendant cannot be convicted of both [CSC I] and [CSC II], pursuant to 9 GCA § 1.22." *Id.* at 13.

[48]     The People's characterization of *Santos* is misguided. In that case, this court held that 9 GCA § 1.22(e) is inapplicable to a charge of sexual penetration involving the commission of another felony, 9 GCA § 25.15(a)(3), and a separate charge concerning the underlying felony of bribery, 9 GCA § 49.30, because the two crimes are prohibited by two separate statutes. *Santos*, 2020 Guam 5 ¶¶ 18-20. These two statutes remediate very different harms, and the crime of bribery requires a separate and distinct "volitional departure" from CSC I. *See Martin*, 2018 Guam 7 ¶ 16. We held that the underlying bribery conviction, as charged, was prohibited by 9 GCA § 1.22(a) as a lesser included offense of the CSC I charge because the "statute requires proof that the underlying felony was committed or, in other words, that the essential elements of the underlying felony be proven." *Santos*, 2020 Guam 5 ¶ 22. Thus, in *Santos,* we did not consider whether 9 GCA § 1.22(e) applies to two charges involving identical conduct under separate statutes

that are a part of one overarching statutory scheme. Our precedent does not foreclose the application of subsection 1.22(e) to violations involving different statutes of the same overarching statutory scheme, i.e., CSC. *See, e.g.*, *Afaisen*, 2016 Guam 31 ¶¶ 6, 51-53 (holding statutory double jeopardy violated under subsection 1.22(e) when defendant was convicted of both robbery under 9 GCA § 40.20(a)(3) and theft of a motor vehicle under 9 GCA §§ 43.20(a) and 43.30(a), arising from same continuing course of conduct); *cf. Aldan*, 2022 Guam 4 ¶¶ 23, 26 (concluding 9 GCA § 1.22(e) prohibits convictions for the same robbery under both 9 GCA § 40.20(a)(2) and 9 GCA § 40.20(a)(3)).

[49]    The People's reliance on our holding in *People v. Martin*, 2018 Guam 7, is also misplaced. *See* Appellee's Br. at 15. As noted by Castro in his reply brief, *Martin* recognizes that multiple charges can be brought for the same type of alleged CSC conduct—without offending subsection 1.22(e)—where the charges concern multiple occurrences, *separate in time*. *See* Appellant's Reply Br. at 1 (Oct. 17, 2023); *Martin*, 2018 Guam 7 ¶ 20 (holding that two CSC I charges were two distinguishable acts, separate in time, where language in the indictment stated, "at a time different than that alleged in [Count One]" (alteration in original)). Unlike in this case, the defendant in *Martin* testified to two distinct instances of sexual penetration, separate in time. *Id.* ¶ 27. Thus, a defendant may be charged and convicted for two sexual acts occurring close in time without creating a double jeopardy problem, so long as they are based on distinct underlying sexual acts.[5]

[50]    The glaring problem with the application of 9 GCA § 1.22(e) to the CSC statutory scheme urged by the People—that subsection 1.22(e) is unavailable where a CSC I charge and a CSC II

---

[5] Although the defendant in *People v. Martin* was also charged with CSC II for the same conduct underlying the CSC I charges, we did not reach whether these charges offended subsection 1.22(e) as the issue was not raised. *See* 2018 Guam 7 ¶¶ 29-30. Instead, reviewing the sufficiency of the evidence, we concluded that the elements that were established for CSC I satisfied the elements for CSC II because CSC II is not a lesser included offense of CSC I under our caselaw analyzing the statutes under section 1.22(a). *Id.* ¶ 30 (citing *People v. Songeni*, 2010 Guam 20 ¶ 27; *People v. Cummins*, 2010 Guam 19 ¶ 8. The defendant in *Martin* did not raise any continuing course of conduct claims with respect to the CSC II convictions.

charge both involve the same identical, uninterrupted conduct—is that it permits multiple convictions in many CSC cases alleging both "sexual penetration" and "sexual contact." *See* Appellee's Br. at 13-19. If almost any act of sexual penetration were also actionable as sexual contact "if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification," 9 GCA § 25.10(a)(8) (2005), defendants would be subject to multiple punishments based on a single criminal transaction, raising double jeopardy concerns.

[51]    Because the evidence proved only one occurrence of cunnilingus, convictions for both CSC I and CSC II stemming from the same sexual act violate 9 GCA § 1.22(e). We reverse the related CSC II conviction. *See Afaisen*, 2016 Guam 31 ¶ 52 ("Although a defendant may be prosecuted for two crimes stemming from the same conduct, that defendant may not be convicted for both crimes."); *Santos*, 2020 Guam 5 ¶ 27 n.5. Where a violation of 9 GCA § 1.22(e) is found, the court is required to "not only reverse" the related conviction "but also dismiss the charge." *Afaisen*, 2016 Guam 31 ¶ 52. Castro's CSC II conviction for "causing his mouth to touch the primary genital area of [K.B.]" shall be reversed and dismissed. *See* RA, tab 80 (Am. Indictment, June 29, 2022) (Second Charge, Count One).

## C. The Jury Was Adequately Instructed on the Essential Elements of CSC II

[52]    Castro claims that each of the three CSC II convictions should be vacated because the trial court did not instruct the jury that sexual arousal or gratification was an essential element of CSC II. Appellant's Br. at 25. The People claim this argument is foreclosed by our holding in *People v. Baluyot*, 2016 Guam 20, "wherein this court held that failure to include the language regarding sexual arousal or gratification as essential elements was not error because the definition was contained in the other jury instructions." Appellee's Br. at 20 (citing *Baluyot*, 2016 Guam 20 ¶ 11).

**[53]**     Castro did not object to this jury instruction at trial, and therefore our review is for plain error. *Felder*, 2012 Guam 8 ¶ 8. "Plain error is highly prejudicial error, which this court 'will not reverse unless (1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process.'" *People v. Gargarita*, 2015 Guam 28 ¶ 11 (quoting *Felder*, 2012 Guam 8 ¶ 19). "The party alleging plain error has the burden of proving it." *People v. Aldan*, 2018 Guam 19 ¶ 13.

**[54]**     The jury was given two instructions for CSC II. *See* RA, tab 84 at 48 (Jury Instrs., July 1, 2022) ("5H. 'Second Degree Criminal Sexual Conduct' Defined"); *id.* at 49 ("5I. 'Sexual Contact' Defined"). The relevant statutory language was provided in the definition of "sexual contact." *Compare* 9 GCA § 25.10(a)(8) (2005), *with* RA, tab 84 at 49 (Jury Instrs.), *and* Tr. at 22 (Jury Instrs., July 1, 2022).[6] The jury instruction defining "sexual contact" included the requirement: "if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." RA, tab 84 at 49 (Jury Instrs.). However, the same requirement was not explicit in the separate instructions laying out the essential elements of CSC II. *Id.* at 52-54 (Instrs. 6B-1,

---

[6] The following language was in the "Definitions" instructions:

**5H. "Second Degree Criminal Sexual Conduct" Defined**

A person is guilty of criminal sexual conduct in the second degree if he engages in sexual contact with another person and if any of the following circumstances exist:

- That other person is under fourteen (14) years of age.

**5I. "Sexual Contact" Defined**

Sexual Contact includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

RA, tab 84 at 48-49 (Jury Instrs., July 1, 2022). Both definitions were read to the jury. Tr. at 22 (Jury Instrs., July 1, 2022). After this, the jury was given instructions for "Intimate Parts," followed by "Essential Elements of First Degree Criminal Sexual Conduct." *Id.* at 22-23. Then, the jury was given instructions for "Essential Elements of Second Degree Criminal Sexual Conduct" for each of the three CSC II counts. *Id.* at 23-26.

6B-2, and 6B-3); Tr. at 23-26 (Jury Instrs.). Castro claims this was error. Appellant's Br. at 25; Reply Br. at 8. We disagree.

[55]    In *Baluyot*, the defendant was a photographer charged with multiple counts of CSC II for sexual contact with a minor that occurred during a photoshoot. 2016 Guam 20 ¶ 1. The jury was given instructions on the legal definition of "sexual contact" that tracked the statutory language of 9 GCA § 25.10(a)(8), like the instructions given here. *Id.* ¶ 6; RA, tab 84 at 49 (Jury Instrs.). In a separate section, the jury was instructed on the essential elements of CSC II, which also tracked the statutory language, requiring that the jury must find "sexual contact" occurred, like the instructions given here. *Baluyot*, 2016 Guam 20 ¶ 6; RA, tab 84 at 52-54 (Jury Instrs.). Like Castro claims here, the defendant in *Baluyot* argued the element that sexual contact be "for the purpose of sexual arousal or gratification" should have been included in the instruction on the essential elements of CSC II. 2016 Guam 20 ¶¶ 11-13. The People countered that the instructions were sufficient because they identified "sexual contact" as an essential element of CSC II and communicated to the jury the *mens rea* requirement in the definition of "sexual contact." *Id.* ¶ 11. We reasoned that there was no error because the instructions tracked the language of the relevant statute, and the *mens rea* requirement was sufficiently expressed when the jury was given the definition of sexual contact. *See id.* ¶¶ 14-16 ("[T]he instructions when read as a whole were not erroneous.").

[56]    Castro attempts to distinguish our holding in *Baluyot* because the defendant was charged solely with CSC II, so only that instruction was given, unlike in this case, where instructions for both CSC I and CSC II were provided. Reply Br. at 9. Castro claims that "[i]t is the contradiction of how the elements were provided between these two charges that provides the nexus of the argument . . . ." *Id.* We are not persuaded. Although this court in *Baluyot* did not deal with the

impact of instructing the jury on both CSC I and CSC II crimes simultaneously, the court resolved the question of whether the instructions were sufficient when, taken as a whole, the instructions sufficiently expressed the crime as it had been defined by the Legislature. 2016 Guam 20 ¶¶ 14-16. In the future, we suggest that an instruction similar to Michigan Model Criminal Jury Instruction 20.2 be used for CSC II, with modifications to incorporate the elements under 9 GCA § 25.20 and the definition of sexual contact under 9 GCA § 25.10.[7]

**[57]** Castro failed to meet his burden of showing there was an error. He cites no authority that would justify deviating from our holding in *Baluyot*.

## D. The Trial Court Did Not Abuse Its Discretion in Excluding Evidence of K.B.'s Sexual History

**[58]** Castro argues that the trial court's application of Guam's rape shield law unconstitutionally limited his right to confront a witness about the sexual knowledge of the victim. Appellant's Br.

---

[7] This model instruction provides:

**MCrim JI 20.2 Criminal Sexual Conduct in the Second Degree**

(1) The defendant is charged with the crime of second-degree criminal sexual conduct. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant intentionally [touched (*name complainant*)'s / made, permitted, or caused (*name complainant*) to touch (his / her)] [genital area / groin / inner thigh / buttock / (or) breast] or the clothing covering that area.

(3) Second, that when the defendant [touched (*name complainant*) / made, permitted, or caused (*name complainant*) to touch (him / her)] it could reasonably be construed as being done for any of these reasons:

    (a) for sexual arousal or gratification,

    (b) for a sexual purpose, or

    (c) in a sexual manner for

        (i) revenge or

        (ii) to inflict humiliation or

        (iii) out of anger.

(4) [*Follow this instruction with one or more of the 13 alternatives, M Crim JI 20.3 – 20.11d, as warranted by the charges and evidence.*]

Mich. Model Crim. Jury Instr. 20.2.

at 21-22. Castro claims his confrontation rights under the Sixth Amendment were violated when the trial court did not permit him to ask M.R. whether M.R. had sexual intercourse with K.B.[8] *Id.* He asserts that the "past sexual relations with male minor witness is relevant to show that the victim's knowledge or lack of knowledge of what happens during sexual relations is not based upon the allegations made upon [Castro]." Appellant's Br. at 19. Castro also claims this was an evidentiary error under Guam Rules of Evidence ("GRE") 402 and 403. *Id.* He cites the Ninth Circuit case of *LaJoie v. Thompson*, 217 F.3d 663 (9th Cir. 2000), to support his assertion that "to exclude past knowledge or explanation of a child's understanding of sex and genitalia is a violation of the Defendant's rights when relevant to show an alternative explanation for the child's knowledge of such facts." Appellant's Br. at 21. "Our cases construing the [Confrontation Clause] hold that a primary interest secured by it is the right of cross-examination." *People v. Ojeda*, 2011 Guam 27 ¶ 21 (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). This court explained that "[b]ecause cross-examination is an important tool in enforcing the right to confront, any limits placed on cross-examination require a constitutional analysis." *Id.* ¶ 21.

[59]     Like other constitutional rights, the right to cross-examine is not absolute. *Id.* ¶ 22; *People v. Kotto*, 2020 Guam 4 ¶ 16. "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Ojeda*, 2011 Guam 27 ¶ 22 (alteration in original) (quoting *People v. Kitano*, 2011 Guam 11 ¶ 39). "[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [the witness's forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of

---

[8] Castro frames his argument in part as a violation of his Fifth Amendment rights, *see* Appellant's Br. at 19, but does not advance any arguments directly addressing the Fifth Amendment in the body of his briefing. "In failing to advance any specific argument in support of this claim, we consider the issue abandoned." *People v. Rachulap*, 2022 Guam 9 ¶ 41 n.4 (citing *People v. Blas*, 2015 Guam 30 ¶ 28; Guam R. App. P. 13(a)(9)(A)).

the factfinder the reasons for giving scant weight to the witness' testimony." *Jesus*, 2009 Guam 2 ¶ 26 (first alteration in original) (quoting *United States v. Owens*, 484 U.S. 554, 558 (1988)). Castro's trial counsel chose not to vigorously cross-examine K.B. about alternate sources of knowledge of sexual acts and male anatomy or about K.B.'s denial of having had sexual relations with M.R. *See* Tr. at 129 (Jury Trial Day 1).[9]

[60]     This court has held that the rights to confront and cross-examine "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Ojeda*, 2011 Guam 27 ¶ 22 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on [the] cross-examination [of a prosecution witness]." *Kotto*, 2020 Guam 4 ¶ 16 (alterations in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Specifically, it is permissible to "exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." *Ojeda*, 2011 Guam 27 ¶ 22 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

[61]     Castro argues that the evidence he attempted to elicit through M.R. was important impeachment evidence, without which the jury was left with the one-sided view that any testimony they heard from K.B., however confused on the details, must have happened because K.B. would have no other source of information about sexual acts and male anatomy. *See* Appellant's Br. at 20. He asserts that this testimony by M.R. was relevant under GRE 402, and not excluded under GRE 403, to show K.B.'s knowledge or lack of knowledge of sexual acts and the male anatomy,

---

[9] The extent of defense counsel's cross-examination of K.B. on this issue was, "You told the police that you were not sexually active with [M.R.], right?" to which K.B. responded, "Yes." Tr. at 129 (Jury Trial Day 1, June 28, 2022).

to help corroborate that K.B.'s boyfriend, M.R., did not see any cuts on K.B., and thus to help prove that K.B. fabricated the incidents. *Id.* at 19-22.

[62] Under Guam's rape shield statute, "evidence of specific instances of a person's past sexual conduct is not admissible in any trial if an issue in such trial is whether such person was a victim of criminal sexual conduct . . . ." 6 GCA § 8207(b) (2005). Guam Rule of Evidence 412 also prohibits this evidence. Guam R. Evid. 412. While there are exceptions to the rape shield statute and Rule 412, we find none of them applicable in this case. *See* 6 GCA § 8207(b); Guam R. Evid. 412(b).

[63] This court recently framed the rules on relevant evidence as follows:

> GRE 402 allows all relevant evidence to be admitted unless otherwise excluded by the U.S. Constitution, the Organic Act, the laws of Guam, or another rule of evidence. Evidence is relevant if it tends to make a fact that is consequential to the action more or less probable than it would be without the evidence. GRE 401.

*People v. Palacios*, 2023 Guam 5 ¶ 13. Guam Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Guam R. Evid. 403.

[64] "Evidentiary rulings of the trial court are reviewed for abuse of discretion and will not be reversed absent prejudice affecting the verdict." *People v. Roten*, 2012 Guam 3 ¶ 13. "This court has defined an abuse of discretion as that exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Id.* (citation modified). "If the trial court has abused its discretion, 'the proper standard for evaluating whether reversal is required is the harmless error standard.'" *Bosi*, 2022 Guam 15 ¶ 15 (quoting *De Soto*, 2016 Guam 12 ¶ 19). The trial court ruled that the evidence Castro tried to elicit through M.R. was not relevant—a GRE 402 ruling. Castro's claim of error is grounded on the assertion that the

proffered evidence would have given the jury an alternative explanation for K.B.'s knowledge or lack of knowledge about sexual acts and male anatomy. Relying heavily on the *LaJoie* case, Castro argues that the exclusion of this evidence violated his rights of confrontation. LaJoie was tried for sexually abusing, orally sodomizing, and raping V.N. when she was seven and eight years old. *Lajoie*, 217 F.3d at 665. At trial, the court excluded evidence proffered by Lajoie that V.N. had a history of sexual assault by as many as five different men going back to when she was as young as two years old. *Id.* at 665-66. The trial court found some of the evidence of V.N.'s prior sexual abuse to be relevant but ultimately excluded the evidence of V.N.'s history of abuse solely because LaJoie did not meet the 15-day notice requirement under the relevant rape shield law—a ruling with which the Oregon Supreme Court found no error. *Id.* at 666, 670.

[65]    Following the affirmance of his conviction, LaJoie filed a petition for writ of habeas corpus, alleging that the exclusion of the evidence violated his constitutional rights. In reversing the district court's denial of LaJoie's petition, the Ninth Circuit found, among other things, that the exclusion of LaJoie's proffered evidence as a sanction for his failure to strictly comply with the rape shield notice requirement was "arbitrary and disproportionate to the aims of the rape shield law's notice provision." *Id.* at 674.

[66]    While the discussion from the Ninth Circuit relative to the need to balance a defendant's constitutional rights of confrontation with a victim's rights under rape shield laws is important, the posture and ultimate issue in *LaJoie* are distinguishable from the matter before this court. In this case, the trial court heard argument on relevancy and ultimately ruled that the proffered evidence—namely whether K.B. and M.R. had a sexual relationship—was not relevant. Castro claims that M.R.'s answer to whether he had sexual intercourse with K.B. was relevant to show that K.B. knew what a penis looked like, Appellant's Br. at 7, 19, even though K.B. testified that her eyes

were closed and she did not look when she touched Castro's penis, Tr. at 133 (Jury Trial Day 1). As noted by the People, "[e]ven if K.B. knew what M.R.'s penis looked like . . . , that fact would have no bearing on K.B.'s lack of knowledge as to what Castro's penis looked like." Appellee's Br. at 25. We agree with the People. The trial court did not abuse its discretion in determining that the line of questioning was irrelevant. *See Roten*, 2012 Guam 3 ¶ 13.

## V. CONCLUSION

[67]     The record contains sufficient evidence to satisfy two convictions for CSC II based on the testimony that Castro touched K.B.'s genitals and caused K.B. to touch his genitals. We **AFFIRM** the CSC II convictions stemming from the conduct at the beach. We **AFFIRM** the CSC I conviction for the conduct in the bedroom because there was sufficient evidence of cunnilingus. However, because the evidence established the commission of only one sexual act during that occurrence, the related CSC II conviction must be **REVERSED** and **DISMISSED** under 9 GCA § 1.22(e). We **REMAND** for entry of a new judgment and resentencing not inconsistent with this Opinion.

|  |  |
|---|---|
| /s/ | /s/ |
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |

/s/
ROBERT J. TORRES
Chief Justice